

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,964

### EX PARTE TERRELL MAXWELL, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. D-1-DC-08-300490
### FROM TRAVIS COUNTY

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, JOHNSON and ALCALA, JJ., joined. WOMACK, J., filed a dissenting opinion in which KELLER, P.J., joined. KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

## O P I N I O N

In his application for a writ of habeas corpus, applicant claims that his mandatory sentence of life imprisonment without the possibility of parole, for a crime he committed as a juvenile, violates the Eighth and Fourteenth Amendments to the United States Constitution under *Miller v. Alabama*.[1]   In that case, the Supreme Court held that a mandatory "life without parole" sentence for a defendant who was under the age of 18 at the time of his crime

---

[1] 132 S. Ct. 2455 (2012).

violates the Eighth Amendment's prohibition on cruel and unusual punishment. Applicant's sentence was imposed, and his conviction affirmed on direct appeal, before the Supreme Court announced its decision in *Miller*. We ordered that this application be filed and set to decide if *Miller v. Alabama* applies retroactively to a claim raised in a post-conviction proceeding, and, if so, what remedy is appropriate.[2] Because we find that the *Miller* court announced a new substantive rule under the first *Teague* exception, we hold that it applies retroactively. We will grant relief, and remand for further sentencing proceedings not inconsistent with *Miller v. Alabama*.

## I.

A jury convicted applicant of the offense of capital murder. The jury heard evidence that, on the night of December 15, 2007, the 17-year-old applicant, along with Rashad Dukes and Michael Jamerson, were "smoking weed and watching movies" when applicant suggested robbing somebody. Applicant had a revolver that was "all black" except for a "pearl white handle"–"kind of a cowboy-looking gun." They drove Jamerson's car to an apartment complex chosen "because that is where the dope dealers and Mexicans were." When they arrived at the complex, they sat in the car for several minutes. Applicant announced that he would shoot the person they robbed if that person did not give them money.

---

[2] *Ex parte Maxwell*, No. AP–76964, 2013 WL 458168, *1 (Tex. Crim. App. Feb. 6, 2013) (not designated for publication). Applicant raised several other issues in his writ application, including ineffective assistance of counsel and various evidentiary matters, but we summarily deny those claims.

The trio then got out of the car and approached Fernando Santander, who was sitting in a parked van. Applicant held his gun to Mr. Santander's cheek and demanded that he "give him his money." Visibly scared, Mr. Santander "put up his hands out of shock." According to Dukes, "[T]hat's when [applicant] shot him." Immediately thereafter, applicant and his accomplices "all took off running at the same time." They returned to Jamerson's car and drove away. Applicant told the others that "he didn't mean to do it" and that "it was an accident." Mr. Santander's body was discovered by friends early the next morning, slumped across the center console of the van. A .44 caliber jacket fragment was recovered from the parking lot near the van. A "tipster" led officers to the three suspects. Dukes and Jamerson confessed and testified against applicant in his capital murder trial.

Because applicant was 17 at the time he committed the murder, the State did not seek the death penalty, and punishment was automatically assessed at life imprisonment without the possibility of parole.[3] The Third Court of Appeals rejected applicant's claim that his automatic sentence violated the Eighth Amendment because he had never raised that claim

---

[3] TEX. PENAL CODE §§ 19.03(a)(2) & 12.31(a) (2009). Until 2005, an individual adjudged guilty of a capital felony in a case in which the State did not seek the death penalty was punished by life. TEX. PENAL CODE § 12.31(a) (2003). From 2005 to 2009, such an individual was punished by life without parole. TEX. PENAL CODE § 12.31(a) (2005-2007). From 2009 to 2013, the sentence was (1) life, if the individual's case was transferred to the district court under Section 54.02, Family Code; or (2) life without parole. TEX. PENAL CODE § 12.31(a) (2009-2011). Section 12.31(a)–amended in response to *Miller*–now provides that "[a]n individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for: (1) life, if the individual committed the offense when younger than 18 years of age; or (2) life without parole, if the individual committed the offense when 18 years of age or older." TEX. PENAL CODE § 12.31(a) (2013).

in the trial court.[4]  It affirmed his conviction and sentence in 2010.[5]

II.

A.      *Miller v. Alabama.*

On June 25, 2012, after applicant's conviction became final, the United States Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."[6]  In deciding the issue, the Court consolidated two cases: *Miller*, an Alabama case on direct appeal, and *Jackson v. Hobbs*, an Arkansas case on collateral review. Both cases involved 14-year-old boys convicted of first-degree murder and sentenced to mandatory life in prison without parole.[7]

The Court held that "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of

---

[4] *Maxwell v. State*, No. 03-09-00027-CR, 2010 WL 4595702, *9 (Tex.App.—Austin Nov. 12, 2010, pet. ref'd) (not designated for publication).

[5] *Id.*

[6] *Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012).

[7] *See id.* at 2460.  In the Arkansas case, Kuntrell Jackson and two other boys, one armed with a sawed-off shotgun in his coat sleeve, robbed a video store.  When the clerk threatened to call the police, one of Jackson's accomplices shot and killed her. The three boys fled empty-handed.  *Id.* at 2461.  In the Alabama case, Evan Miller and his friend Colby Smith smoked marijuana and played drinking games with Cole Cannon, a neighbor, until Cannon passed out.  Miller stole his wallet, splitting about $300 with his friend, but when he tried to put the wallet back in Cannon's pocket, Cannon woke up and grabbed Miller by the throat.  Smith beat Cannon with a baseball bat to make him let go of Miller, who then grabbed the bat and repeatedly struck Cannon with it. The boys then retreated to Miller's trailer, but they soon returned to Cannon's trailer and lit two fires to cover up evidence of their crime. Cannon eventually died from his injuries and smoke inhalation. *Id.* at 2462.

disproportionate punishment."[8]  It stated that those determining the sentence of a juvenile must take into account the offender's "age and the wealth of characteristics and circumstances attendant to it."[9] Under a mandatory "life without parole" sentencing scheme, the factfinder cannot consider a juvenile's

> chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him— and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.[10]

The Court did not foreclose the option of a "life without parole" sentence for juvenile murderers, but *Miller* requires the sentencer to consider "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."[11] Therefore, the "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon," because it is difficult to distinguish "between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile

---

[8] *Id.* at 2469.

[9] *Id.* at 2467.

[10] *Id.* at 2468 (citations omitted).

[11] *Id.* at 2469.

offender whose crime reflects irreparable corruption."[12]

## B.    Retroactivity under *Teague v. Lane*.

In *Teague* and its progeny, the Supreme Court laid out the framework to decide whether a "new rule" announced in one of its opinions should be applied retroactively to criminal convictions that were already final on direct review. Under the *Teague* framework, a "new rule" applies retroactively in a collateral proceeding only if the rule (1) is substantive or (2) is a "watershed" rule of criminal procedure.[13]

New substantive rules "apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an *act that the law does not make criminal'* or *faces a punishment that the law cannot impose upon him*" because of his status or offense.[14] Watershed rules of criminal procedure also apply retroactively because those rules implicate "the fundamental fairness and accuracy of the criminal proceeding."[15] But a new "watershed" procedural rule "must be one 'without which the likelihood of an accurate conviction is seriously diminished.'  This class of rules is extremely narrow," and it is unlikely that any more new ones will emerge.[16]

---

[12] *Id.* (quotations marks omitted).

[13] *Whorton v. Bockting*, 549 U.S. 406, 416 (2007).

[14] *Schriro v. Summerlin*, 542 U.S. 348, 351, 352 (2004) (emphasis added) (quoting *Bousley v. United States,* 523 U.S. 614, 620 (1998)).

[15] *Saffle v. Parks*, 494 U.S. 484, 495 (1990).

[16] *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (quoting *Saffle*, 494 U.S. at 505).  In *Summerlin*, the Court explained that new procedural rules

Although the United States Supreme Court held in *Danforth v. Minnesota*[17] that state courts need not utilize the *Teague* retroactivity rule, we follow *Teague* as a general matter of state habeas practice,[18] and we will not deviate from our precedent in this instance.

### III.

Federal and state courts across the country have struggled with the issue of whether *Miller* applies retroactively to post-conviction proceedings.[19]  For example, the Eleventh

---

> do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding."

*Id.* (citations omitted).  As the Louisiana Supreme Court stated in *State v. Tate*, ___ So. 3d. __, 2013 WL 5912118  (La. 2013), the exception for "watershed" rules of criminal procedure

> "is extremely narrow," and since its decision in *Teague*, the Supreme Court has "rejected every claim that a new rule satisfied the requirements for watershed status." In fact, the Court has indicated "it is unlikely that any" watershed rules have "'yet to emerge.'" The only case ever to satisfy this high threshold is *Gideon v. Wainwright*, in which the Court "held that counsel must be appointed for any indigent defendant charged with a felony" because "[w]hen a defendant who wishes to be represented by counsel is denied representation, *Gideon* held, the risk of an unreliable verdict is intolerably high. The new rule announced in *Gideon* eliminated this risk." Therefore, it is not enough that a new rule is aimed at improving the accuracy of trial, or even that it promotes the objectives of fairness and accuracy; the rule must institute procedures implicit in the concept of ordered liberty to come within this exception.

*Id.* at *7 (citations omitted).

[17] 552 U.S. 264, 280–81 (2008).

[18] *Ex Parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013).

[19] *See Miller*, 132 S. Ct. at 2471 ("By our count, 29 jurisdictions (28 States and the Federal Government) make a life-without-parole term mandatory for some juveniles convicted of murder in adult court.").  A considerable number of those jurisdictions have weighed in on the retroactivity issue, but no consensus has emerged.

Circuit and the Louisiana, Pennsylvania, and Minnesota Supreme Courts, and some lower federal and state courts have all held that *Miller* is not retroactive.[20]  However, the First, Second, Third, Fourth, and Eighth Circuits have held that habeas applicants successfully made out a *prima facie* case that *Miller* is retroactive, and they have granted motions to file successive habeas corpus petitions raising *Miller* claims.[21]  The Fifth Circuit has so far split the baby:  One panel has found a *prima facie* showing that *Miller* satisfies the test for retroactivity; another has not.[22]  The Nebraska, Massachusetts, Iowa, and Mississippi high courts, as well as several lower state and federal courts, have also held that *Miller* is retroactive.[23]

---

[20] *In re Morgan*, 713 F. 3d 1365 (11th Cir. 2013); *Martin v. Symmes*, ___ F. Supp. ___, 2013 WL 5653447, *16 (D. Minn. 2013); *State v. Tate*, ___ So.3d ___, 2013 WL 5912118, *6-9 (La. 2013); *Commonwealth v. Cunningham*, 81 A.3d 1, 11 (Pa. 2013);  *Chambers v. State*, 831 N.W.2d 311, 331 (Minn. 2013); *People v. Carp*, 828 N.W.2d 685, 711-14 (Mich. Ct. App. 2012, pet. granted); *Geter v. State*, 115 So. 3d 375, 385 (Fla. Dist. Ct. App. 2012).

[21]  *In re Pendleton*, 732 F.3d 280, 282-83 (3d Cir. 2013) (per curium) ("After extensive briefing and oral argument, we conclude that Petitioners have made a prima facie showing that *Miller* is retroactive. In doing so, we join several of our sister courts of appeals. *See, e.g.*, *Wang v. United States,* No. 13–2426 (2nd Cir. July 16, 2013) (granting motion to file a successive habeas corpus petition raising a *Miller* claim); *In re James*, No. 12–287 (4th Cir. May 10, 2013) (same); *Johnson v. United States*, 720 F.3d 720 (8th Cir. 2013) (per curiam) (same).").

[22] *In re Simpson*, No. 13–40718, 2014 WL 494816 (5th Cir. Feb. 7, 2014)  (per curiam) ("[W]e find that the Supreme Court's actions in *Miller* and the procedural posture of *Miller* itself satisfy Simpson's burden to make a prima facie showing that his petition rests on a new rule of law made retroactive by the Supreme Court on collateral review.") (not designated for publication); *Craig v. Cain*, No. 12–30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013) (per curiam) ("*Miller* does not satisfy the test for retroactivity because it does not categorically bar all sentences of life imprisonment for juveniles") (not designated for publication).

[23] *State v. Mantich*, ___ N.W.2d ___, 2014 WL 503134 (Neb. 2014); *Diatchenko v. District Attorney for Suffolk Dist.*, 1 N.E. 3d 270 (Mass. 2013); *State v. Ragland,* 836 N.W.2d 107, 114-17 (Iowa 2013); *Jones v. State*, 122 So.3d 698, 703 (Miss. 2013); *Alejandro v. United States*, ___ F.

The competing arguments over the retroactivity issue focus largely on whether the *Miller* decision–which virtually everyone agrees announces a "new rule"–falls under the first *Teague* exception: Is the new rule announced in *Miller* a "substantive" one prohibiting a certain category of punishment for a class of defendants because of their status or offense?[24]

Those courts holding that *Miller* is not retroactive strictly construe that first *Teague* exception–a new substantive rule of law–to apply only when the new rule entirely removes a particular punishment from the list of punishments that may be constitutionally imposed on a class of defendants,[25] not when a rule addresses the considerations for determining a

Supp. ___, 2013 WL 4574066, *1 (S.D.N.Y. 2013) ("Because *Miller* announced a new rule of constitutional law that is substantive rather than procedural, that new rule must be applied retroactively on collateral review."; "Having been authorized by the Second Circuit to adjudicate Alejandro's latest § 2255 motion, the Court must apply the new rule announced in *Miller* to his case. Since Alejandro was under 18 years old at the time of the commission of his crimes, *Miller* clearly applies to Alejandro's sentence and compels this Court to set aside his sentence and to resentence him in conformity with the new law."); *Toye v. State*, ___ So.3d ___, 2014 WL 228639, *6 (Fla. Dist. Ct. App. 2014) ("*Miller* applies retroactively to provide postconviction relief for juvenile homicide offenders sentenced to mandatory terms of life in prison without the possibility of parole"; rejecting *Geter*, *supra* n. 20); *In re Rainey*, ___ Cal. Rptr. 3d ___, 2014 WL 794354 (Cal. Ct. App. 2014); *People v. Williams*, 982 N.E.2d 181, 196 (Ill. Ct. App. 2012). *See also Tulloch v. Gerry,* Nos. 12-CV-849, 13-CV-050, 13-CV-085, 08-CR-1235, 2013 WL 4011621 (N.H. Super. Jul. 29, 2013).

[24] *Ragland*, 836 N.W.2d at 114 ("The competing arguments over the retroactivity of *Miller* essentially narrow the inquiry to whether the decision merely established a new penalty phase procedure for courts to follow before imposing a life sentence without parole for crimes committed by juveniles or whether the decision established either a substantive rule of law or one that implicates fundamental fairness and accuracy of the criminal proceeding.").

[25] For example, the Supreme Court entirely removed the option of a death sentence as a possible punishment in a capital-murder case when the defendant is mentally retarded. *Atkins v. Virginia*, 536 U.S. 304 (2002). Lower courts have uniformly held that *Atkins* applies retroactively to collateral proceedings as well as cases on direct appeal. *See Ex parte Briseno*, 135 S.W.3d 1, 3 (Tex. Crim. App. 2004) (applying *Atkins* retroactively to applicant seeking habeas corpus relief); *Bell v. Cockrell*, 310 F.3d 330, 332 (5th Cir. 2002) (retroactively applying *Atkins* in federal habeas proceedings); *Hill v. Anderson*, 300 F.3d 679, 681 (6th Cir. 2002) (stating that *Atkins* applies

particular sentence.[26]   These courts conclude that *Miller* does not satisfy the test for retroactivity because it does not categorically bar all sentences of life without parole for juveniles; *Miller* bars only those sentences made mandatory by an explicit sentencing scheme.[27]   It changed the permissible method–the procedure–by which the State could exercise its continuing power to punish juvenile homicide offenders by life without parole.[28]   Those courts state that *Miller*, though informed by the "categorical ban" cases like *Graham, Roper,* and *Atkins*,[29] is more like *Ring*, *Apprendi*, or *Padilla*,[30] because it is

_____

retroactively).

[26] *In re Morgan*, 713 F.3d 1365, 1368 (11th Cir. 2013) ("A new rule is substantive when that rule places an entire class beyond the power of the government to impose a certain punishment regardless of the procedure followed, not when the rule expands the range of possible sentences."); *People v. Carp*, 828 N.W.2d 685, 711 (Mich. Ct. App. 2012) ("*Miller* does not alter the elements necessary for a homicide conviction. Rather it simply necessitates the consideration of certain factors, when juveniles are involved, in sentencing.").

[27] *See Martin v. Symmes*, ___ F. Supp. ___, 2013 WL 5653447, *16 (D.Minn. 2013) ("*Miller* does not satisfy the first *Teague* exception because it does not place a class of conduct (homicide by a juvenile) beyond the power of the state to proscribe, nor does it prohibit a category of punishment (life in prison without parole) for a class of defendants (juveniles) based on their offense (homicide). Rather, *Miller* prohibits a sentencing *scheme* in which a particular sentence is mandatory rather than the result of a process in which the offender's youth and attendant circumstances are considered.").

[28] *Carp*, 828 N.W.2d at 711 ("Our determination that *Miller* does not comprise a substantive new rule and, therefore, is not subject to retroactive application for cases on collateral review is supported by the fact that the ruling does not place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.") (quotation marks omitted).

[29] *Graham v. Florida*, 560 U.S. 48, 82 (2010) ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide."); *Roper v. Simmons*, 543 U.S. 551, 578 (2005) ("The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed."); *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) ("Construing and applying the Eighth Amendment in the light of our 'evolving standards of decency,' we therefore conclude that such

procedural–simply requiring an additional sentencing procedure for juvenile offenders.[31]

These courts also downplay the importance of the Court's remand of *Miller's* companion case, *Jackson v. Hobbs*–which came to the Court through Arkansas's state collateral-review process–as constituting a ruling or determination on retroactivity because the Court did not specifically hold that *Miller* is retroactive on collateral review.[32]

---

punishment is excessive and that the Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender.").

[30] *State v. Tate*, ___ So.3d ___, 2013 WL 5912118, *7 (La. 2013) ("[B]ecause the *Miller* Court, like the Court in [*Ring v. Arizona*, 536 U.S. 584 (2002) (Capital defendants are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment)], merely altered the *permissible methods* by which the State could exercise its continuing power, in this case to punish juvenile homicide offenders by life imprisonment without the possibility of parole, we find its ruling is procedural, not substantive in nature.") (relying on *Schriro v. Summerlin*, 542 U.S. 348 (2004), which held that *Ring v. Arizona* was properly classified as procedural rather than substantive, and thus did not apply retroactively to death-penalty case already final on direct review); *Geter v. State*, 115 So. 3d 375, 382 (Fla. Ct. App. 2012) (holding that, like *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which requires that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, and *Padilla v. Kentucky*, 559 U.S. 356 (2010), which requires that counsel inform a client whether his plea carries a risk of deportation, the *Miller* "decision constitutes an evolutionary refinement designed to correspond to new developments in an ever-changing area of law.") (quotation marks omitted).

[31] *In re Morgan*, 713 F.3d 1365, 1368 (11th Cir. 2013) ("*Miller* changed the procedure by which a sentencer may impose a sentence of life without parole on a minor by requiring the sentencer to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison. And the Court declined to consider a categorical bar on life without parole for juveniles, or at least those 14 and younger.") (quotation and alteration marks omitted).

[32] *Id*. at 1367 ("The requirement that a new rule be made retroactive on collateral review by the Supreme Court 'is satisfied only if th[e] [Supreme] Court has held that the new rule is retroactively applicable to cases on collateral review.' And the Supreme Court has not held that *Miller* is retroactively applicable to cases on collateral review.") (quoting *Tyler v. Cain*, 533 U.S. 656, 662 (2001)).

Conversely, those courts holding that *Miller* is retroactive have reasoned that it announced a substantive rule that prevents a "significant risk that a juvenile faces a punishment that the law cannot impose on him."[33]    They point to the Supreme Court's explanation of a "new substantive rule" in *Schriro v. Summerlin*: New substantive rules include "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish."[34]   *Miller* places juveniles subject to mandatory "life without parole" statutes beyond the State's power to punish.[35]  It alters the range of outcomes of a criminal proceeding by prohibiting a mandatory sentence of life without parole for a juvenile murderer.[36] *Miller* is categorical because it completely removes a particular punishment from the list of punishments that can be constitutionally imposed, that of mandatory life without parole.[37]

---

[33] *Jones v. State*, 122 So.3d 698, 702 (Miss. 2013) (quotation and alteration marks omitted).

[34] *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004).

[35]  *State v. Ragland*, 836 N.W.2d 107, 115 (Iowa 2013) ("From a broad perspective, *Miller* does mandate a new procedure. Yet, the procedural rule for a hearing is the result of a substantive change in the law that prohibits mandatory life-without-parole sentencing. Thus, the case bars states from imposing a certain type of punishment on certain people.").

[36] *See Tulloch v. Gerry,* Nos. 12-CV-849, 13-CV-050, 13-CV-085, 08-CR-1235, 2013 WL 4011621, *6 (N.H. Super. Jul. 29, 2013).

[37] *Diatchenko v. District Attorney for Suffolk Dist.*, 1 N.E.3d 270 (Mass. 2013) ("The rule explicitly forecloses the imposition of a certain category of punishment—mandatory life in prison without the possibility of parole—on a specific class of defendants: those individuals under the age of eighteen when they commit the crime of murder. Its retroactive application ensures that juvenile homicide offenders do not face a punishment that our criminal law cannot constitutionally impose on them.").

These courts note that the Supreme Court's reliance on the categorical and individual sentencing lines of cases represents its intent that *Miller* apply retroactively–because *Graham*, *Roper*, and *Atkins* were applied retroactively.[38]  These courts also say that the Supreme Court implicitly made *Miller* retroactive by applying the rule to *Miller's* companion case, *Jackson v. Hobbs*–a post-conviction case on collateral review.[39]

Courts are split on the retroactivity question because it is a close call, and it is one that ultimately must be resolved by the Supreme Court.  But *Miller* is driven, first and foremost, by the conclusion that "children are constitutionally different from adults for purposes of

---

[38] *State v. Ragland*, 836 N.W.2d 107, 116 (Iowa 2013) ("[T]he cases used by the Court in *Miller* to support its holding have been applied retroactively on both direct and collateral review. *See In re Sparks*, 657 F.3d 258, 261–62 (5th Cir. 2011) (indicating *Graham* was made retroactive on collateral review by the Supreme Court as a matter of logical necessity under *Tyler* ); *see also Tyler*, 533 U.S. [656, 669 (2001)] (O'Connor, J., concurring) (describing the syllogistic relationship between *Teague's* exception to nonretroactivity for rules placing certain conduct beyond the power of the state to proscribe and subsequent cases that fit into *Teague's* exception); *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989) ("[T]he first exception set forth in *Teague* should be understood to cover not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense."), *abrogated on other grounds by Atkins*, 536 U.S. at 321. We joined this discourse three years ago when we held *Graham* applied retroactively. *Bonilla v. State,* 791 N.W.2d 697, 700–01 (Iowa 2010). This practical observation of the treatment of the underlying authority of *Miller* is instructive. If a substantial portion of the authority used in *Miller* has been applied retroactively, *Miller* should logically receive the same treatment.").

[39] *See Diatchenko*, 1 N.E.3d at 281 ("Our conclusion is supported by the fact that in *Miller*, the Supreme Court retroactively applied the rule that it was announcing in that case to the defendant in the companion case who was before the Court on collateral review.") (citation omitted); *People v. Williams*, 982 N.E.2d 181, 197 (Ill. Ct. App. 2012) ("It is instructive that the *Miller* companion case, *Jackson v. Hobbs*, arising on collateral review, involved a life-without-parole-sentence heretofore final. Notwithstanding its finality, the Supreme Court of the United States in effect retroactively applied *Miller* and vacated Jackson's sentence. '[O]nce a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated.'") (quoting *Teague*, 489 U.S. at 300).

sentencing."[40]  Looking into the crystal ball, we think that the Supreme Court will hold that

*Miller* falls under the first *Teague* exception.  We conclude that it is a "new substantive rule"

that puts a juvenile's *mandatory* "life without parole" sentence outside the ambit of the

State's power.

In distinguishing *Ring,*[41] which "altered the range of permissible methods for

determining whether a defendant's conduct is punishable by death," one judge quoted a post-

*Ring* Supreme Court case that stated that "'[r]ules that allocate decision-making authority in

this fashion are prototypical procedural rules[.]'"[42]

> This reasoning does not apply to *Miller*. First, unlike the rule in *Ring*,
> *Miller* does not alter the manner of determining culpability. Instead, *Miller*
> alters the range of outcomes available for certain criminal conduct. The
> respondents suggest that *Miller* is a procedural rule because it alters the range
> of permissible methods for determining whether a juvenile's conduct is
> punishable by life in prison without parole. The court disagrees. Before *Miller*,
> there was no method to determine whether a juvenile's conduct was punishable
> by life in prison without parole—it was automatic and mandatory. After
> *Miller*, there is a range of new outcomes—discretionary sentences that can
> extend up to life without the possibility of parole but also include the more
> lenient alternatives. Thus, *Miller* is distinguishable from *Ring* because it does
> not simply reallocate decision making authority from judge to jury; instead, it
> provides a sentencing court with decision making authority where there once

---

[40] *Miller*, 132 S. Ct. at 2464.

[41] *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (holding that a sentencing judge, sitting without a jury, may not make a finding of an aggravating circumstance that is necessary for the imposition of the death penalty).

[42] *Tulloch v. Gerry,* Nos. 12-CV-849, 13-CV-050, 13-CV-085, 08-CR-1235, 2013 WL 4011621, *6 (N.H.Super. Jul. 29, 2013) (granting four petitioners' request for habeas relief and remanding for sentencing hearings consistent with *Miller v. Alabama*) (quoting *Schriro v. Summerlin,* 542 U.S. 348, 353 (2004)).

was none—banning mandatory life sentences without parole and requiring discretionary sentences. Under *Miller*, a juvenile defendant is required to have the opportunity to establish that life without parole is not an appropriate sentence. For these reasons, the *Miller* rule is substantive.[43]

We agree.

In *Miller*, the Supreme Court predicted that "appropriate occasions for sentencing juveniles to the harshest possible penalty will be uncommon" because of the "great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption."[44] This may be one of those uncommon cases. But, under *Miller v. Alabama*, that must be a discretionary decision made by the sentencing factfinder, based upon all of the evidence, not an automatic mandatory "life without parole" sentence. Accordingly, the petitioner's request for habeas relief and motion to vacate his sentence are granted. We remand this case for further sentencing proceedings to permit the factfinder to assess applicant's sentence at (1) life with the possibility of parole (as both pre-2005 and post-2013 Texas law permits) or (2) life without parole after

---

[43] *Id.* at *7.

[44] *Miller,* 132 S. Ct. at 2469 (some quotation marks omitted). Chief Justice Roberts suggested an ulterior motive for the prediction:

> [T]he Court's gratuitous prediction appears to be nothing other than an invitation to overturn life without parole sentences imposed by juries and trial judges. If that invitation is widely accepted and such sentences for juvenile offenders do in fact become "uncommon," the Court will have bootstrapped its way to declaring that the Eighth Amendment absolutely prohibits them.
>
> This process has no discernible end point—or at least none consistent with our Nation's legal traditions.

*Id.* at 2481 (Roberts, C.J., dissenting).

consideration of applicant's individual conduct, circumstances, and character.[45]

Delivered: March 12, 2014
Publish

---

[45] In its Brief, the Travis County District Attorney opposes the retroactive application of *Miller*, but states that it has or will be submitting a request to the Texas Board of Pardons and Paroles that Terrell Maxwell's sentence of life without parole be commuted to a sentence of life with the possibility of parole. State's Brief at 18 n. 9. This matter is best addressed in the trial court.