

# In the Court of Criminal Appeals of Texas

---

No. WR-84,327-01

---

EX PARTE JOSEPH FRANCOIS JEAN,

*Applicant*

---

On Application for Writ of Habeas Corpus
Cause No. 1302120-A in the 230th District Court
Harris County

---

YEARY, J., filed a dissenting opinion.

Today the Court reforms Applicant's sentence from death to life without parole, based on his claim, made *for the first* time on post-conviction habeas corpus, that he is intellectually disabled. *See* Majority Opinion at 3 (reforming Applicant's sentence to life without parole based on *Atkins v. Virginia*, 536 U.S. 304 (2002), *Moore v. Texas*, 581 U.S. 1 (2017), and *Moore v. Texas*, 139 S. Ct. 666 (2019)). It does so without

ever addressing (1) whether this claim, which was not raised in the trial court, has been (or is subject to being) procedurally defaulted, or (2) whether it should be subjected to a more rigorous standard of proof than a preponderance of the evidence.[1] Because the Court grants relief without first resolving these threshold issues, I respectfully dissent.

## I. PROCEDURAL DEFAULT?

In June of 2002, in *Atkins*, the United States Supreme Court declared that to execute a "mentally retarded" (now described as an "intellectually disabled") offender would violate the Eighth Amendment. Applicant committed his capital offense years later, in April of 2010, and he was tried in 2011. Nothing prevented him from complaining, at that time—*at his trial*—that imposition of the death penalty against him would violate the Eighth Amendment under *Atkins*. But he did not. And neither did he raise it on direct appeal. Only now does he raise the claim—for the first time in his initial application for writ of habeas corpus under Article 11.071. TEX. CODE CRIM. PROC. art. 11.071. But should he even be permitted to do so under these circumstances? The Court does not say.

"It has become a staple in our habeas corpus jurisprudence that

---

[1] This is hardly the first time the Court has granted *Atkins* relief without first addressing every issue necessary to that disposition. *See Ex parte Lizcano*, 607 S.W.3d 339 (Tex. Crim. App. 2020) (Yeary, J., dissenting) (questioning whether it was appropriate for this Court to resolve the intellectual disability claim itself when the jury's resolution of that issue was suspect under the first *Moore* opinion, rather than to return the case to the trial court for a new resolution of the claim); *Ex parte Williams*, No. WR-71,296-03, 2020 WL 7234532 at *2 (Tex. Crim. App. Dec. 2020) (Yeary, J., dissenting) (same) (not designated for publication); *Ex parte Segundo*, ___ S.W.3d ___, 2022 WL 1663956 at *7 (Tex. Crim. App. May 25, 2022) (Yeary, J., dissenting) (same).

preservation of error is generally a prerequisite to being granted relief." *Garza v. State*, 435 S.W.3d 258, 261−62 (Tex. Crim. App. 2014). "Generally, all of the reasons that support the need for a matter to have been raised at trial when the matter is relied upon on direct appeal apply equally or more forcefully when a matter is relied upon in postconviction habeas corpus." *Id.* at 262 (quoting George E. Dix & John M. Schmolesky, 43B TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 59:7, at 810 (3d ed. 2011)). Nevertheless, the Court grants *Atkins* relief in this case without even mentioning the fact that Applicant sought no such relief from the judge or jury at his capital murder punishment phase, much less asking itself whether that omission should constitute a forfeiture, of any kind, in these post-conviction habeas corpus proceedings.[2]

This is not the first time in recent memory that the Court has granted relief in post-conviction habeas proceedings while failing to address a potential procedural default. Just one good example is *Ex parte Maxwell*, 424 S.W.3d 66, 67 (Tex. Crim. App. 2014). There, the applicant claimed that his mandatory life-without-parole sentence for a

---

[2] This is true notwithstanding that the Court has oftentimes proclaimed that issues of error preservation are "systemic," meaning that an appellate court may not reverse a conviction on direct appeal without first addressing any such issue, even if the parties have not raised it. *E.g.*, *Darcy v. State*, 488 S.W.3d 325, 327−28 (Tex. Crim. App. 2016). And on direct appeal of death penalty capital cases in this Court, we have made it clear that the onus is on the appellant either to show where in the record he has preserved his claim of trial court error or to explain why preservation of the particular error he is claiming on appeal is unnecessary under the framework of *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993). *Leza v. State*, 351 S.W.3d 344, 358 (Tex. Crim. App. 2011). Why the Court would not impose a similar burden on Applicant in his initial post-conviction habeas corpus application under Article 11.071 goes unexplained in its opinion today.

crime committed when he was a juvenile violated the Eighth Amendment as expounded by the United States Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012). The issue that the Court explicitly addressed in *Maxwell* was the retroactivity of *Miller*. Once it concluded that *Miller* had retroactive application, the Court simply granted relief without independently inquiring whether the issue had been (or had to be) preserved by a proper objection in the trial court. *Maxwell*, 424 S.W.3d at 76.

When this manifest deficiency was later called to the Court's attention, in *Garza*, a majority maintained that it had in fact "held" in *Maxwell*—if only "by necessary implication"—"that a claim asserting an Eighth Amendment violation under *Miller* was not subject to procedural default." *Garza*, 435 S.W.3d at 261. In her dissenting opinion in *Garza*, however, Presiding Judge Keller took issue with that conclusion. She agreed that the Court *should* have addressed the procedural default issue in *Maxwell*, but not that the Court in fact *had* addressed it, even if only "by necessary implication." *Id*. at 271−72 (Keller, P.J., dissenting).

> Instead of assuming that we must have intentionally, but silently, resolved the procedural default issue in the convicted person's favor because that is the only way in which our disposition in *Maxwell* could have been correct, we should admit that we made a mistake, overlooking an issue that we should have addressed. * * * We should not compound such a mistake by proceeding under the legal fiction that our complete failure to address the issue was actually a silent disposition.

*Id*. at 272 (Keller, P.J., dissenting). Today, the Court repeats the same mistake it made in *Maxwell*: It grants relief—this time in an unsigned

per curiam opinion—without expressly acknowledging, much less resolving, the unavoidable issue of procedural default.

Perhaps today the Court would say that Applicant cannot have been expected to raise the issue of intellectual disability at the time of his trial because, as of that time, the United States Supreme Court's two *Moore* opinions had not been decided. It may be that the Court believes that, until the Supreme Court disowned this Court's opinion in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), Applicant could reasonably have believed that he could not possibly prevail on an *Atkins* claim. *See* Majority Opinion at 2 (pointing out that the Supreme Court "rejected . . . our use of the *Briseno* factors" for determining intellectual disability in its first *Moore* opinion). This would constitute a kind of "right-not-recognized" exception to the ordinary preservation of error requirement—an exception that might *formerly* have been thought to apply to excuse Applicant's failure to object at trial.[3]

To this potential argument, my reply is two-fold.

In the first place, *Atkins* had long been in place by the time of Applicant's 2011 trial. If he thought *Briseno* was an impediment to succeeding on an *Atkins* claim at the trial court level, he should have preserved the claim anyway and then argued on appeal, just as Moore himself did, that *Briseno* was wrongly decided.

Second, and more fundamentally, this Court has in any event

---

[3] *See Ex parte Chambers*, 688 S.W.2d 483, 486 (Tex. Crim. App. 1984) (Campbell, J., concurring, joined by five other judges) ("This Court has for at least twelve years held that a defendant has not waived his right to assert a constitutional violation by failing to object at trial if at the time of his trial the right had not been recognized.").

rightly rejected the "right-not-recognized" rubric in favor of the scheme—for determining whether error must be preserved—that the Court articulated in *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993).[4] *See Sanchez v. State*, 120 S.W.3d 359, 365−67 (Tex. Crim. App. 2003) ("The 'right not recognized' exception to the contemporaneous-objection rule relates to a kind of fundamental error . . . that *Marin* generally eliminated from our jurisprudence."); *see also Karenev v. State*, 281 S.W.3d 428, 433 (Tex. Crim. App. 2009) (same); *Ex parte Moreno*, 245 S.W.3d 419, 423 n.15 (Tex. Crim. App. 2008) (same); *Garza*, 435 S.W.3d at 275 (Keller, P.J., dissenting) (pointing out that, "[i]n *Sanchez*, [the Court] expressly stated that the 'right not recognized' doctrine is inconsistent with our current law of error preservation") (quoting *Sanchez*, 120 S.W.3d at 365).[5]

---

[4] *Marin* described three categories of "rules" for determining the applicability of principles of procedural default. 851 S.W.2d at 279. It described category one, which it called "absolute requirements and prohibitions," in these terms:

> Finally, absolute requirements and prohibitions, like rights that are waivable only, are to be observed even without partisan request. But unlike waivable rights, they can't lawfully be avoided even with partisan consent. Accordingly, any party entitled to appeal is authorized to complain that an absolute requirement or prohibition was violated, and the merits of his complaint on appeal are not affected by the existence of a waiver or forfeiture at trial.

851 S.W.2d at 280.

[5] *See generally Proenza v. State*, 541 S.W.3d 786, 794−95 (Tex. Crim. App. 2017), and cases cited therein (observing that questions of so-called "fundamental" error, which determines whether contemporaneous-objection rules apply, are now exclusively considered within the *Marin* framework).

Perhaps, instead, the Court assumes that an *Atkins* claim, if borne out, would fall within *Marin*'s first category of claims, which may be raised for the first time even in a post-conviction writ application. In *Ex parte Moss*, 446 S.W.3d 786, 788−89 (Tex. Crim. App. 2014), for example, the Court recognized that a claim that a trial court lacked personal or subject-matter jurisdiction may be raised for the first time, even in an initial post-conviction habeas proceeding, because jurisdiction is simply not a matter that is optional with the parties.[6] The Court might believe, similarly, in this case, that an *Atkins* claim is a category one claim under *Marin*—that to execute an intellectually disabled defendant is so antithetical to the consensual values of American society that a habeas applicant's wish to avoid it is simply not subject to forfeiture by a failure to invoke his Eighth Amendment claim at the time of trial. If that is indeed what the Court believes, it should *expressly* say so, and explain *why* it is so, before granting relief based on such a claim for the first time in an unsigned per curiam opinion.

## II. HIGHER STANDARD OF PROOF?

But even if the Court were to conclude that an *Atkins* claim does fall within *Marin*'s first category, and therefore may be raised for the first time in an initial post-conviction setting, an additional question still looms. Should an applicant who *could have* made a record at trial in support of his *Atkins* claim, but did not, be required to satisfy a higher level of proof before obtaining relief on that claim when raising it for the first time in an initial post-conviction habeas corpus proceeding? Should

---

[6] *See Marin*, 851 S.W.2d at 279 ("The clearest cases of nonwaivable, nonforfeitable systemic requirements are laws affecting the jurisdiction of the courts.").

he be required to establish intellectual disability to a level of confidence greater than by a preponderance of the evidence?

An *Atkins* claim is not like most category one *Marin* post-conviction habeas corpus claims. Most category one *Marin* claims are based upon facts already apparent from the appellate record; the record of the trial already provides a basis for raising the claim, and yet the applicant failed to raise it at trial.[7] Ordinarily, we would say that a habeas applicant has forfeited such a claim. *Garza*, 435 S.W.3d at 261−62. But if it is a category one *Marin* claim, we do not invoke principles of forfeiture; we will grant the applicant relief so long as the appellate record bears the claim out.

But most claims brought in post-conviction habeas corpus proceedings are *not* predicated on facts already developed in the appellate record. If a claim is of federal constitutional dimension, and if it is based upon extra-record facts, it is typically cognizable. In fact, that is primarily what post-conviction habeas corpus proceedings are all about: to provide the convict with a forum in which to prove extra-record facts which, if true, would entitle him to relief notwithstanding the lack of any apparent deficiency in the *appellate* record.

Applicant's Eighth Amendment claim of intellectual disability *could* have been raised at trial, since he was tried post-*Atkins*. If it is a

---

[7] The Court's opinion in *Proenza* provides a ready example. There, the question was whether the appellant could complain for the first time on appeal that a colloquy between the trial court and a witness violated Article 38.05 of the Code of Criminal Procedure, which prohibits the trial court judge from commenting on the evidence in the course of ruling on its admissibility. 541 S.W.3d at 791. The question was whether this purely record-based claim was subject to forfeiture at trial for a failure to object. The case did not involve additional fact development.

category one *Marin* claim, the Court would still allow him to raise it for the first time in a post-conviction writ proceeding. But to prevail on his claim, he cannot rely on the *appellate* record, since *he* did not attempt to litigate intellectual disability at trial. It is not, therefore, a record-based claim. But it *could* have been, had Applicant taken the opportunity to develop his claim at trial. He could also, then, have raised it on appeal.

In a very real sense, Applicant bears responsibility for not having raised this issue either at trial or, later, on direct appeal. And because he did *not*, though he *could* have, perhaps there should be some consequence. Perhaps we should conclude that he *may raise* his claim for the first time in post-conviction habeas corpus proceedings, because it is a category one *Marin* claim, but he will nonetheless be required to establish the truth of his claim by a higher level of proof than would ordinarily be the case in an initial writ application.

There are analogous precedents for such a conclusion. Suppose, for instance, that Applicant had complained for the first time on appeal that the trial court failed to submit an *Atkins* instruction to the jury at the conclusion of the punishment phase of his capital trial. Even though he neither requested such an instruction at trial nor objected to its absence, if there had been at least some evidence of intellectual disability presented at his trial, such that *Atkins* became a part of "the law applicable to the case[,]" under Article 36.14 of the Code of Criminal Procedure, he might have been permitted to raise this issue for the first time on appeal. TEX. CODE CRIM. PROC. art. 36.14 (requiring the trial court judge to "deliver to the jury" "a written charge distinctly setting forth the law applicable to the case"). But he would have been required,

*in that event*, to identify a greater level of harm—"egregious harm"— from the record before he would be entitled to appellate relief, under Article 36.19 of the Code as construed by this Court in *Almanza. See Almanza v. State*, 686 S.W.2d 157, at 171 (Tex. Crim. App. 1985) (op. on reh'g) ("[I]f no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short, 'egregious harm.'") (quoting TEX. CODE CRIM. PROC. art. 36.19).

Similarly, suppose Applicant had not raised *Atkins* in this, his initial, application for writ of habeas corpus, but only raised it for the first time in a *subsequent* writ application. This Court has decided that even a category one *Marin* claim will be forfeited if not raised in an initial writ application, unless it otherwise satisfies the "applicable procedural bars" of Article 11.071, Section 5. *See Moss*, 446 S.W.3d at 789−90 ("[W]e caution individuals seeking habeas relief in a subsequent writ application that *Sledge* continues to bar an applicant from obtaining relief on a jurisdictional claim in a subsequent application if the applicant cannot overcome applicable procedural bars.") (citing *Ex parte Sledge*, 391 S.W.3d 104, 106−09, 111 (Tex. Crim. App. 2013)); TEX. CODE CRIM. PROC. art. 11.071, § 5.

But even when a subsequent habeas applicant *can* overcome the procedural hurdle of Article 11.071, Section 5, such that his *Atkins* claim will be entertained, even in a subsequent writ application, this Court has held that he will be subjected to a heightened standard of proof before he may obtain relief on that claim.

Applying Section 5(a)(3) of Article 11.071, this Court has concluded, in *Ex parte Blue*, that a subsequent writ application raising *Atkins* must contain sufficient facts to show, *by clear and convincing evidence*, that no rational fact finder *would fail to find him to be intellectually disabled.* 230 S.W.3d 151, 162 (Tex. Crim. App. 2007). Thus, while we permitted the subsequent habeas applicant in *Blue* to proceed to the merits of his *Atkins* claim despite his failure to have raised it in his initial writ application, we applied a far more rigorous standard of proof than merely showing that he was intellectually disabled by a preponderance of the evidence, as would have been the case had he raised it in his initial writ (at least from a trial that preceded *Atkins*). *See id.* (observing that "[t]he state habeas applicant who alleges that he is mentally retarded in an initial post-conviction writ application must prove it by a preponderance of the evidence in order to obtain relief on his claim").

It is true that in each of these scenarios, the heightened standard of proof that must be applied derives from a provision of the Code of Criminal Procedure. There is, at present, no comparable Code provision that would speak to a specific standard of proof that should apply to an initial post-conviction habeas applicant who could have raised an *Atkins* claim at trial—but did not. But then, the Court has long been operating in a legislative limbo with respect to procedures that would govern Eighth Amendment *Atkins* claims. This Court has been improvising for the entire twenty-year-plus "legislative interregnum" since *Atkins* was decided, with a view to "provide the bench and bar with" what the Court hoped would be only "temporary guidelines in addressing *Atkins*

claims." *Briseno*, 135 S.W.3d at 5. All the while the Court has implored the Legislature to fill the regulatory void. *See, e.g.*, *In re Allen*, 462 S.W.3d 47, 53−54 (Tex. Crim. App. 2015) ("In terms of issues surrounding intellectual-disability, we still find ourselves in the same 'interregnum' that existed in 2004. * * * We now make explicit what we before expressed only tacitly: Legislation is required.").

In the absence of such legislative guidance, this Court should at least follow the principle that the Legislature seems to follow when faced with situations where litigants procedurally default an issue in an earlier setting that nevertheless—because the matter is so important to the proper functioning of our system—must be later reached by a reviewing court. In such situations our laws would ordinarily impose a heightened standard of proof to an initial habeas applicant who *could* have raised *Atkins* at trial. And perhaps that heightened burden might even be something somewhat less onerous than the *Blue* standard for subsequent writs, but at least marginally more taxing than the ordinary preponderance standard.[8]

Otherwise, a capital defendant has no incentive at all to litigate his intellectual disability claim at trial. And this is especially apparent,

---

[8] *Marin* itself is really a court-made rubric. The Court did not derive it from the language of then-Rule 52(a) of the Rules of Appellate Procedure—now Rule 33.1(a). Instead, the Court applied it as a kind of judicial gloss on the formal contemporaneous objection rule, observing that it "applies only to actions of the trial judge concerning which a party forfeits the benefit of a right belonging to him if he does not complain about it at trial. The rule does not apply to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal." 851 S.W.2d at 280. To the extent that *Marin* represents, after all, a court-made doctrine, we should modify it where appropriate, in the absence of controlling legislation.

as cases like this one bear out, when such a defendant might expect a more propitious outcome in a first time, *de novo* determination of the claim *in this Court*, under <u>the same</u> *forgiving preponderance standard* he would have had to meet to prove his case to a jury of his peers. Jurors, after all, would have had the benefit—*that we do not enjoy*—of actually judging the weight and credibility of the testimony of the defendant's experts, family members, and friends, against their own direct, eyewitness observations of the defendant in the courtroom, in addition to all the other evidence that might weigh against his claim. To that end, the United States Supreme Court has recognized that a trial on the merits is "the 'main event,' so to speak," even for claims of federal constitutional dimension. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977).

Even if the Court were to conclude that *Atkins* is a category one *Marin* claim—that an initial habeas applicant may raise for the first time in an initial writ application—then, if he *could* have raised his *Atkins* claim at trial, we should make his omission consequential in some way, if only to avoid such anti-systemic forum shopping. Imposing a higher standard of proof would serve that purpose.

### III. CONCLUSION

The Court grants relief on Applicant's *Atkins* claim without even considering how these substantial issues should be resolved. I would at least file and set the case to address them, and I would certainly not grant relief in a per curiam opinion that fails to do so. Because the Court does, I respectfully dissent.


**FILED:**                                       April 19, 2023
**PUBLISH**