# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00585-CR

---

**Richard Wayne Rains, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. CR2022-049B, THE HONORABLE TRACIE WRIGHT-RENEAU, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Richard Wayne Rains appeals his conviction for repeated violation of a protective order and sentence, as a habitual offender, of life imprisonment. He argues that the jury charge failed to define the phrase "in violation of a protective order" and failed to require proof that he received service of the application of the protective order and notice of the protective order hearing. And he argues that his life sentence for making impermissible phone calls is cruel and unusual. We find the jury-charge omissions did not cause egregious harm and the Eighth Amendment claim unpreserved and therefore affirm.

### BACKGROUND

In November 2021, New Braunfels police officers responded to a domestic-violence call on South Santa Clara Avenue. Jennet Wilson (pseudonym) thereafter applied for a family violence protective order. On February 16, 2022, the trial court heard the

application. Both Wilson and Rains appeared in person and announced ready. The trial court found that "family violence has occurred and is likely to occur again in the future and that the Respondent has committed family violence and the following orders are necessary for the safety, welfare, and protection of Jennet Wilson (pseudonym)." The Court found that "the Respondent committed an act constituting a felony offense involving family violence against Jennet Wilson (pseudonym)." It entered a Family Violence Protective Order under Chapter 85 of the Family Code, prohibiting Rains from, among other things, communicating in any manner with Wilson except through the applicant's attorney or a person appointed by the court.

A few days later, the Comal County Sheriff's Office served the protective order on Rains, who was in the Comal County Jail at the time. Nevertheless, Rains called Wilson from the Comal County Jail numerous times. Rains was indicted on a third-degree charge of repeated violation of a protective order based on communications "by telephone" with Wilson on March 4, 5, 9, 11, and 12 and April 5, 2022. The indictment alleged two enhancement paragraphs—a 2007 felony conviction for manufacture or delivery of a controlled substance and a 1998 conviction for felony possession of a controlled substance.

At trial, the recorded jail calls, from State's Exhibit 4, were played for the jury. Neither party objected to the jury charge, and the jury convicted Rains.

At the punishment hearing before the trial court, Rains pled true to the two alleged enhancement paragraphs. The State presented evidence of Rains's lengthy criminal history. More calls, contained in State's Exhibit 20, were played, in which Rains stated, among other things, "I didn't have it to her head, I pointed it at her a couple times"; "and look, I had enough . . . I smacked her on the ground" and "slapped her around a bit"; "I've been arrested 37 fucking times in my life and the DA holds that on me. I've got three fucking aggravated assaults with deadly weapons with

2

my hands"; "I've beaten people up and not women, men"; "Yes, and I've got a fucking homicide and it's on my paperwork here that I got away with and DA's don't like that, now he's got away with murder, he's beat the fuck out of people, he's still on the street"; "you are a fool if you don't think they are going to try to give me a life sentence." The trial court also heard that Rains identifies as a member of the Aryan Brotherhood and saw photographs of his Aryan Brotherhood tattoos—including one of a swastika. Wilson testified, reluctantly, and downplayed Rains's abuse. Photographs of her injuries, ammunition found at the Santa Clara property, and a firearm found at a house behind it where Rains had been found hiding, were shown to the trial court.

The trial court sentenced Rains to life in prison. Rains did not object to the sentence.

## ANALYSIS

### *Jury Charge*

Rains first complains of the trial court's failure to define "in violation of a protective order issued under Chapter 85, Family Code" and to require proof that Rains was served with the application and notice of the protective hearing—prerequisites to the protective order being binding.

We review all alleged jury-charge errors, regardless of preservation in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The first question in analyzing a jury-charge issue is whether the charge contains error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Then, if the charge contains error, we analyze that error for harm. *Id.* If there was not a timely objection, the record must show "egregious harm." *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). "An erroneous jury charge is egregiously harmful

3

if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id.* "Under *Almanza*, reviewing courts should consider the following four factors: 1) the charge itself; 2) the state of the evidence including contested issues and the weight of the probative evidence; 3) arguments of counsel; and 4) any other relevant information revealed by the record of the trial as a whole." *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

As is relevant here, a person commits a repeated violation of a protective order if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an offense under Section 25.07. Tex. Penal Code § 25.072. And a person commits a violation of a protective order if, in violation of a condition of an order issued under Chapter 85, Family Code, that has been served on the person, the person knowingly or intentionally communicates in any manner with the protected individual except through the person's attorney or a person appointed by the court, if the violation is of an order that prohibits that conduct. *Id.* § 25.07(a)(2)(C).

The Texas Court of Criminal Appeals has held that the statute requires an element of knowledge of the protective order, and for orders issued under Chapter 85, the offense requires proof that the respondent was served with the application and received notice of the protective order hearing. *Harvey v. State*, 78 S.W.3d 368, 371–72 (Tex. Crim. App. 2002). The court's charge to the jury in such a case should define the term "in violation of an order" to mean "in violation of an order that was issued after a hearing held after the defendant received service of the application for a protective order and notice of the hearing." *Id.* at 373. And it should include, as an element of the offense to be found by the jury, that the defendant received service of the application of the protective order and notice of the hearing. *Id.*

4

The trial court erred in failing to include the definition in the abstract jury charge and the element in the application charge. Because Rains did not object to the charge, we review the error for egregious harm.

*The Charge Itself*

As Rains notes, the jury-charge error was not corrected or ameliorated in another portion of the charge. Here both the definition and the element were left out.

*The State of the Evidence Including Contested Issues and the Weight of the Probative Evidence*

Rains did not argue that he did not receive service of the application or notice of the hearing. Recited within the order itself is the remark that "Richard Wayne Rains appeared in person and announced ready." A sheriff's deputy testified that he served the protective order on Rains at the Comal County jail, and the trial court admitted into evidence both the return of service form and a certified copy of the protective order.

*Arguments of Counsel*

The Defense's closing argument focused on the fact that Wilson did not testify at this phase of trial ("She's the one person who can positively identify herself in those calls" and "Sergeant Ebert himself said he could only identify her to the best of his knowledge based on two or three calls"), and the calls Rains made were not to Wilson's phone ("each of those calls were made to phone numbers that were not associated with [Wilson]"). The State argued, "A lot of this case isn't up to debate" including the existence of a protective order:

> Is there a protective order? It's in evidence. Y'all can take it back with you if you want to read it. It's got all of this on here. It's got all of those warnings we talked about. It has language in there he's not to communicate with her. No doubt whatsoever. It's a certified document.

5

> He was actually in court according to the court document right here, so I don't have to prove that he was served with it the day after, but I brought you the deputy to testify that he served him, and service is right here. He had it.

*Any Other Relevant Information Revealed by the Record of the Trial as a Whole*

Rains, in the jail calls, repeatedly expressed that he knew he was breaking the law by making the calls, but that he did not care.

> Just shut up for one minute can you? Can you? Please? Please? First of all, I'm taking a big chance. You would never go out on a limb and break the law for me, period. You'd never do it, I'm doing it right now. I'm doing it right now. And I don't give a fuck about these people, okay?
>
> I'm breaking all the rules right now . . . I'm breaking everything, and they are going to hold it . . . against me, but I can't help it, I love you so much . . . I'm not going without talking to my baby . . . if they take this to court, you know, you're going to have to go see your people in Japan or something . . . you said you were going to see them anyway . . . If they indict me . . . You got to go see your people, they are listening to everything we're saying, you got to go somewhere, you can't be subpoenaed by these cocksuckers, you said you wasn't going to testify on me anyway[.]

*No Egregious Harm*

We hold that the omissions in the jury charge did not egregiously harm Rains because they neither affected the very basis of the case, deprived Rains of a valuable right, nor vitally affected a defensive theory. *See Wesley v. State*, 605 S.W.3d 909, 921 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (holding similar omissions did not cause egregious harm under like facts).

### **Cruel and Unusual Punishment**

In his second issue, Rains argues his life sentence for a communications-based offense is grossly disproportionate in violation of the Eighth Amendment. He argues that there is

"nothing graduated about a life sentence for making phone calls from jail." "Neither is there anything proportional about a life sentence for making phone calls."

Rains failed to object to his sentence when the trial court pronounced it. Nor did he file any post-trial motions or objections raising the Eighth Amendment claim. To preserve error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. Tex. R. App. P. 33.1(a). Barring narrow exceptions, all errors—even alleged Eighth Amendment violations—may be forfeited on appeal if an appellant failed to object at trial. *Garza v. State*, 435 S.W.3d 258, 260–61 (Tex. Crim. App. 2014). There are exceptions. If the sentence is outside the ambit of the State's power, the claim is not subject to procedural default. *Id.* at 261. In *Garza*, a claim by a juvenile criminal defendant that he was improperly subjected to a mandatory life-without-parole sentence in violation of the Eighth Amendment was not subject to ordinary notions of procedural default, such that that claim was not forfeited through a lack of objection in the trial court. *Id.* at 262 (citing *Ex parte Maxwell*, 424 S.W.3d 66, 75 (Tex. Crim. App. 2014)).

Rains's sentence was not outside the ambit of the State's power. Generally, "punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). As indicted, repeated violation of a protective order is a third-degree felony, punishable by a term of confinement for not more than ten nor less than two years and a possible fine not to exceed $10,000. Tex. Penal Code §§ 12.34, 25.072(e). With Rains's habitual-offender enhancement, he faced a punishment range of imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. *Id.* § 12.42(d). Because Rains failed to preserve the issue, and the sentence was not

outside the ambit of the State's power, we overrule Rains's second issue. *Garza*, 435 S.W.3d at 261; *Simpson*, 488 S.W.3d at 323; *see Compton v. State*, 666 S.W.3d 685, 729 (Tex. Crim. App. 2023) (concluding similar sentencing challenge was forfeited).

## CONCLUSION

Having overruled Rains's two appellate issues, we affirm the judgment of the trial court.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed: June 17, 2026

Do Not Publish