**Conditionally Granted; and Opinion Filed October 3, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01167-CV

## No. 05-14-01168-CV

## IN RE CRAIG WATKINS, Relator

**Original Proceeding from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F13-00257-V, F13-54696-V**

## MEMORANDUM OPINION
Before Justices O'Neill, Lang, and Brown
Opinion by Justice Lang

Craig Watkins, the elected District Attorney of Dallas County, filed a petition for a writ

of mandamus[1] in these pending capital murder cases arguing that the trial court improperly

ordered a pretrial determination of whether the defendant is intellectually disabled.[2] Because we

---

[1] Relator first attempted to file its petition for writ of mandamus in the Texas Court of Criminal Appeals. That court summarily denied relator's motion for leave to file the petition without comment. *See In re Watkins,* Nos. WR-82,011-01, WR-82,011-02 (Tex. Crim. App. Aug. 29, 2014) (not designated for publication) (order denying motion for leave to file application for writ of mandamus). Real party argues that this disposition by the court of criminal appeals forecloses consideration of the petition by this Court. We disagree. "[F]ailure to grant a petition for writ of mandamus is not an adjudication of, nor even a comment on, the merits of a case in any respect, including whether mandamus relief was available." *In re AIU Ins. Co.,* 148 S.W.3d 109, 119 (Tex. 2004) (orig. proceeding); *see also* TEX. R. APP. P. 72.1 (leave to file original proceeding), 72.2 (disposition of motion for leave). Following the court of criminal appeals' denial of leave to file the relator's petition for writ of mandamus, relator filed a petition for writ of mandamus in this Court, which we denied for improper authentication under rule 52.3(k) of the Texas Rules of Appellate Procedure. *See In re Watkins,* No. 05-14-01124-CV, 2014 WL 4385797, at *1 (Tex. App.—Dallas Sept. 5, 2014, orig. proceeding) ("Because relator has failed to authenticate the mandamus record as required by the rules of appellate procedure, he has failed to establish his right to relief."). This disposition also does not foreclose consideration of the current petition. *See In re Arpin Am. Moving Sys., LLC,* 416 S.W.3d 927, 929 (Tex. App.—Dallas 2013, orig. proceeding) (concluding denial of earlier petition for writ of mandamus for lack of proper certification under Rule 52.3(j) did not preclude consideration of subsequently filed petition)

[2] The intellectual disability defense to the imposition of the death penalty was formerly called "mental retardation." *See Atkins v. Virginia*, 536 U.S. 304, 321 (2002). In *Hall v. Florida*, __ U.S. __, 134 S. Ct. 1986 (2014), the Supreme Court adopted a change of terminology reflected in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders. The Supreme Court has noted that the terms "mental retardation" and "intellectual disability" describe the identical phenomenon. *Id.* at 1990.

conclude relator has a clear right to the relief sought and has no adequate appellate remedy, we conditionally grant the petition for writ of mandamus.

## I. FACTUAL AND PROCEDURAL CONTEXT

Real party Tyrone Allen is charged by indictment with two capital murders. Relator has given notice that the State intends to seek the death penalty. The case has not yet gone to trial and real party has not been convicted of capital murder nor has a sentence of death been imposed. Nonetheless, real party by pretrial motion requested that the trial court make a determination that he is intellectually disabled and "thereafter preclude the State from seeking the death penalty." The trial court granted the motion and ordered that a hearing be set to determine whether real party is intellectually disabled.[3] Relator asserts the trial court acted without authority when it ruled it would determine the issue of intellectual disability in a pretrial hearing without a jury.

## II. JURISDICTION AND STANDARD OF REVIEW

The court of criminal appeals has exclusive jurisdiction over post-conviction litigation in death-penalty cases. *See generally* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(h) (West Supp. 2013) (stating that a conviction and sentence of death shall be subject to automatic review by the Court of Criminal Appeals); TEX. CODE CRIM. PROC. ANN. art. 11.071 (West Supp. 2013) (establishing post-conviction habeas procedure in death-penalty cases before the Court of Criminal Appeals). However, this Court and the court of criminal appeals have concurrent jurisdiction over mandamus petitions challenging the pretrial actions of district courts in this Court's appeals district. *See* TEX. CONST. art. V, §§ 5, 6 (establishing the jurisdiction of the court of criminal appeals and courts of appeals, respectively); TEX. CODE CRIM. PROC. ANN. art. 4.04,

---

[3] The hearing at which the trial judge intended to determine the issue of intellectual disability was originally set for September 5, 2014. By order dated September 11, 2014 we stayed that hearing pending further order of the Court. The trial court rescheduled the hearing for November 3, 2014, but has stated no intent to hold the hearing while this mandamus proceeding is pending. Real party filed a motion to lift the stay in light of the rescheduling. We denied the motion and the stay remains in effect.

§ 1 (West 2005) (granting mandamus jurisdiction to court of criminal appeals in criminal law matters); TEX. GOV'T CODE ANN. § 22.221(b) (West 2004) (granting mandamus jurisdiction to courts of appeals over courts within their appellate districts); *Padilla v. McDaniel*, 122 S.W.3d 805, 807 (Tex. Crim. App. 2003) (noting courts of appeals have mandamus jurisdiction in criminal law matters that is concurrent with jurisdiction of court of criminal appeals).

To establish a right to mandamus relief in a criminal case, the relator must show that the trial court violated a ministerial duty and there is no adequate remedy at law. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013). The ministerial act requirement is satisfied if the relator can show a clear right to the relief sought. *Id.* "A clear right to relief is shown when the facts and circumstances dictate but one rational decision 'under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles.'" *Id.* When a trial court acts beyond the scope of its lawful authority, a clear right to relief exists. *See, e.g., State ex rel. Watkins v. Creuzot,* 352 S.W.3d 493, 506 (Tex. Crim. App. 2011) (holding State entitled to mandamus relief because there was no basis under Texas law to conduct a pretrial evidentiary hearing to determine adequacy of mitigation case in capital-murder proceeding); *State ex rel. Lykos v. Fine,* 330 S.W.3d 904, 919 (Tex. Crim. App. 2011) (holding State entitled to mandamus relief because there was no state law or state procedure permitting pretrial hearing and ruling that would deprive relator of the opportunity to try its capital case and seek the death penalty). An issue of first impression can qualify for mandamus relief even though the factual scenario has never been precisely addressed when the principle of law has been clearly established. *Weeks,* 391 S.W.3d at 122.

## IV. CLEAR RIGHT TO RELIEF

### A. *Effect of Determination of Intellectual Disability*

Under Texas law, a defendant convicted of capital murder faces only two possible sentences: death or life imprisonment without parole. TEX. PENAL CODE ANN. § 12.31(a) (West Supp. 2013). As in *Lykos v. Fine* and *Watkins v. Creuzot,* here real party, the defendant in a pending capital murder prosecution, is attempting to prevent relator from pursuing one of these two options, the death penalty, via a pretrial evidentiary hearing and ruling–in this case by seeking a pretrial ruling on intellectual disability.

A determination of intellectual disability is of no small consequence in a capital case. The Supreme Court has announced that "death is not a suitable punishment for an [intellectually disabled] criminal." *Atkins v. Virginia,* 536 U.S. 304, 321 (2002). "[A]s the Supreme Court made explicit in *Atkins*, proof of [intellectual disability] 'exempts' one from the death penalty, the maximum statutory punishment for capital murder." *Ex parte Briseno,* 135 S.W.3d 1, 10 (Tex. Crim. App. 2004). A defendant determined to be intellectually disabled is no longer "death-eligible," but rather is constitutionally "actually innocent of the death penalty." *See Ex parte Blue*, 230 S.W.3d 151, 160 (Tex. Crim. App. 2007).[4] Once a determination is made that a defendant is intellectually disabled, the Eighth Amendment prohibits the defendant's execution. *Atkins,* 536. U.S. at 321*; Hall v. State,* 160 S.W.3d 24, 35-36 (Tex. Crim. App. 2004); *Ex parte Lizcano*, No. 05-07-00720-CR, 2007 WL 2421515 (Tex. App.—Dallas Aug. 28, 2007, pet. ref'd) (mem. op., not designated for publication).

---

[4] As Judge Johnson noted in her concurrence in *Blue*, the concept of "actual innocence of the death penalty" is more properly expressed as "ineligibility for the death penalty" because "it has nothing whatsoever to do with a claim of actual innocence, that is, that the claimant did not commit the charged offense." *Ex parte Blue,* 230 S.W.3d 151, 170–71 (Tex. Crim. App. 2007) (Johnson, J. concurring).

## B. *Procedure for Determination of Intellectual Disability*

Although execution of those determined to be intellectually disabled is constitutionally prohibited, "there is no procedural restriction on the State's power to prosecute defendants who claim [intellectual disability.]" *Lizcano*, 2007 WL 2421515, at *2.[5] It is clear that "[n]ot all people who claim to be [intellectually disabled] will be so impaired as to fall within the range of [intellectually disabled] offenders about whom there is a national consensus [against execution.]" *Atkins*, 536 U.S. at 317. As the Supreme Court has noted, "To the extent there is serious disagreement about the execution of [intellectually disabled] offenders, it is in determining which offenders are in fact [intellectually disabled.]" *Id.* The *Atkins* Court did not establish a bright-line rule for determining what constitutes intellectual disability, and noted that there are many factors involved in clinical definitions of intellectual disability. *See id.* at 317–18. The Supreme Court left to the individual states the job of establishing the substantive and procedural mechanisms to implement its holding in *Atkins*. *Id.* at 317.

There is presently no legislative guidance in Texas on what constitutes intellectual disability or how the ban on the execution of the intellectually disabled is to be implemented procedurally.[6] In the absence of legislative guidance, the court of criminal appeals undertook the task commended to the states by the Supreme Court in *Atkins*. *Briseno,* 135 S.W.3d at 6-9. In *Briseno* the court of criminal appeals identified the definitional characteristics that must be

---

[5] , By pretrial application for writ of habeas corpus, Lizcano sought a separate jury determination of whether he was intellectually disabled and, therefore, ineligible for the death penalty. The trial court denied habeas corpus relief. On appeal, we concluded Lizcano's claims were not cognizable by pretrial application for writ of habeas corpus because Lizcano had an adequate remedy upon appeal of his conviction if he was sentenced to death and because the granting of a separate jury to make a pretrial intellectual disability determination would not result in Lizcano's immediate release from prosecution or conviction. We affirmed the trial court's order. *Lizcano,* 2007 WL 2421515, at *2.

[6] The court noted in *Briseno*, that the 77th Legislature passed a bill even before *Atkins* was announced that would have prohibited the execution of intellectually disabled defendants convicted of capital murder and sentenced to death. The bill would have further adopted a definition of intellectual disability that defined it as "significant subaverage general intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period." *Briseno,* 135 S.W.3d at 6–7 & nn.20–22. That bill also provided for an initial determination of intellectual disability by the jury subject to an independent post-verdict determination of intellectual disability by the trial judge if the jury rejected the claim of intellectual disability. *Id.* at 6 n.21. The Governor vetoed the bill. The 78th legislature then introduced and considered several statutes implementing *Atkins*, but none were passed. *Id.* at 6. There have been no legislative developments in the intervening decade since *Briseno*. In 2008, the court of criminal appeals explained that "[u]nless and until legislative action is taken, the current guidelines remain in effect because there is no adequate alternative that would ensure that our judicial system complies with the Supreme Court's mandate." *Neal v. State,* 256 S.W.3d 264, 271 (Tex. Crim. App. 2008).

addressed and applied in determining whether a defendant is intellectually disabled and set forth "some other evidentiary factors which factfinders in the criminal trial context might also focus upon in weighing evidence as indicative of [intellectual disability] or of a personality disorder." *Id.* at 8. The court of criminal appeals did not, however, address in *Briseno,* or in any subsequent decisions, the timing of the determination of intellectual disability. *See Hunter v. Stat*e, 243 S.W.3d 664, 672 (Tex. Crim. App. 2007) ("The guidelines formulated in *Briseno* do not address when the determination of [intellectual disability] is to be made.").[7]

## C. *Requirement of Jury Determination of Intellectual Disability*

Although the court of criminal appeals has not addressed the timing of the determination of intellectual disability, it has made clear that the determination of intellectual disability is a question of fact. *Ex parte Hearn*, 310 S.W.3d 424, 428 (Tex. Crim. App. 2010) ("Determining whether one has significantly subaverage intellectual functioning is a question of fact."); *see also Briseno,* 135 S.W.3d at 9 ("[T]he ultimate issue of whether this person is, in fact, [intellectually disabled] for purposes of the Eighth Amendment ban on excessive punishment is one for the finder of fact, based upon all of the evidence and determinations of credibility."); *accord Gallo v. State*, 239 S.W.3d 757, 777 (Tex. Crim. App. 2007). That the determination of intellectual disability has been commended to the fact finder, does not, however, dictate the conclusion that the determination of intellectual disability must in all cases be made by a jury. In *Schriro v. Smith,* 546 U.S. 6 (2005) (per curiam), the Supreme Court considered Arizona's procedure for post-conviction habeas corpus relief. The Ninth Circuit had ordered the question of whether the habeas applicant was intellectually disabled to be determined by a jury trial unless the parties

---

[7] This Court has similarly noted with regard to the existence of statutory authority that, "there is no statutory authority supporting a pretrial jury determination of mental retardation and eligibility for the death penalty." *Lizcano,* 2007 WL 2421515, at *2. It is clear that "[i]n the absence of legislation or a constitutional requirement directing when the determination of mental retardation is to be made or by whom," a trial court does not err "in denying appellant a pretrial determination of mental retardation by a judge or jury separate from that determining guilt." *Hunter v. State,* 243 S.W.3d 664, 672 (Tex. Crim. App. 2007). There is also "no requirement that the issue of intellectual disability be decided by a factfinder other than the jury that determined the outcome of the guilt or innocence phase of the trial." *Neal v. State,* 256 S.W.3d 264, 272 (Tex. Crim. App. 2008).

waived the right to a jury trial. *Id.* The Supreme Court concluded that the Ninth Circuit erred in imposing this requirement. It explained:

> The Ninth Circuit erred in commanding the Arizona courts to conduct a jury trial to resolve Smith's mental retardation claim. *Atkins* stated in clear terms that "'we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.'" States, including Arizona, have responded to that challenge by adopting their own measures for adjudicating claims of mental retardation. While those measures might, in their application, be subject to constitutional challenge, Arizona had not even had a chance to apply its chosen procedures when the Ninth Circuit pre-emptively imposed its jury trial condition.

*Id. at* 7–8 (citations omitted). As in *Schriro*, the Texas Court of Criminal Appeals has concluded there is neither constitutional nor a statutory right to a determination of intellectual disability by a jury in connection with the determination of a petition for post–conviction writ of habeas corpus. *See Briseno*, 135 S.W.3d at 11 ("[W]e hold that, when an inmate sentenced to death files a habeas corpus application raising a cognizable *Atkins* claim, the factual merit of that claim should be determined by the judge of the convicting court."); *Hearn*, 310 S.W.3d at 428 n.6 (citing *Briseno*, 135 S.W.3d at 9 for proposition, "[a] jury determination of [intellectual disability] is not required").

The conclusion that a jury is not required in the determination of a post-conviction habeas corpus claim of intellectual disability does not, however, compel the conclusion that trial courts possess the freedom to remove the jury from the equation in the context of a determination of intellectual disability during the pendency of a capital murder trial. As clearly discussed in *Schriro*, the Court's ruling was grounded in respect for legislatively established procedures for the determination of post-conviction petitions for writs of habeas corpus. *Schriro,* 546 U.S. at 8 ("Arizona had not even had a chance to apply its chosen procedures when the Ninth Circuit pre-emptively imposed its jury trial condition.") The decision by the Texas Court of Criminal Appeals that juries need not be empaneled to hear post-conviction writs of habeas corpus raising

intellectual disability claims was also based on similar respect for the legislatively established post-conviction habeas corpus procedures. As the court of criminal appeals explained in *Briseno*:

> [O]ur state habeas statute does not provide for a jury determination of fact issues on post-conviction habeas corpus review. Instead, it requires the convicting court to address and determine all previously unresolved factual issues. It is within the Legislature's prerogative to enact a statute requiring or allowing a jury determination of [intellectual disability] on post-conviction review, but unless it does so, we must follow the Legislature's current statutory procedures

*Briseno,* 135 S.W.3d at 11 (citing TEX. CODE CRIM. PROC. ANN. art. 11.071, § 9(a)).

A similar respect for statutory procedure requires the opposite result when the issue of intellectual disability arises in the context of a pending capital murder trial. Although, as discussed above, the legislature has failed to enact a statute that explicitly requires or allows a jury to determine the issue of intellectual disability in a capital case, the code of criminal procedure does, in fact, mandate the determination of all punishment–related issues of fact of any kind by the jury in a capital case. Article 37.071, section 2 establishes the procedural requirements for the penalty phase in a capital case. TEX. CODE CRIM. P. ANN. art. 37.071, § 2 (a)–(f) (West Supp. 2013). Significantly, section 2 requires that upon a finding that the defendant is guilty of a capital offense, the court must conduct a sentencing proceeding "before the trial jury." *Id.* § 2(a)(1). Texas law further prohibits the waiver of a jury trial in capital cases where the State seeks the death penalty. TEX. CRIM. PROC. CODE ANN. art. 1.13(a) (West 2007) ("The defendant in a criminal prosecution for any offense other than a capital felony case in which the state notifies the court and the defendant that it will seek the death penalty shall have the right, upon entering a plea, to waive the right of trial by jury. . . ."); *see also* TEX. CODE CRIM. PROC. ANN. art. 1.14(a) (West 2005) (permitting a defendant to waive any rights secured to him by law, except that in a capital felony case a defendant may only waive the right to a jury if the State has notified the trial court it will not seek the death penalty and in writing and in open

court consents to the waiver). In both the guilt or innocence phase of the proceedings and the penalty phase, "[u]nless otherwise provided in this Code, the jury is the exclusive judge of the facts. . . ." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007).

These provisions, when read together, require that fact issues related to punishment in a capital case be determined by the same jury that determines guilt or innocence. Because intellectual disability is an issue of fact that is relevant to the determination of punishment,[8] under Texas criminal procedure as it presently stands, the factual determination whether the defendant is intellectually disabled must be made by the jury that determines the guilt or innocence of the defendant.[9] Thus, the trial court acted beyond the scope of its lawful authority in ordering the pretrial hearing at which the court would determine whether real party is intellectually disabled. Relator has established a clear right to the relief sought on that basis.

## IV. ADEQUACY OF APPELLATE REMEDY

Relator argues mandamus relief is proper because there is no means of appealing the trial court's decision to conduct the requested pretrial hearing on intellectual disability. Article 44.01

---

[8] Real party argues that the constitutional bar against execution of the intellectually disabled is an exemption based on the status of the defendant. *See, e.g., Penry v. Lynaugh,* 492 U.S. 302, 329-330 (1989) (characterizing bar on execution of intellectually disabled defendants as a rule "prohibiting a certain category of punishment for a class of defendants because of their status or offense.") He contends that because the bar to execution is based on status, the relevant provisions of the code of criminal procedure governing trial by jury, affirmative defenses and punishment mitigating jury issues do not govern. In support of this argument he cites the recent decision of the court of criminal appeals in *Ex parte Maxwell*, 424 S.W.3d 66, 75 (Tex. Crim. App. 2014), in which the court of criminal appeals stated that the Supreme Court's decision in *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455 (2012) "puts a juvenile's mandatory 'life without parole' sentence outside the ambit of the State's power." *Maxwell,* 424 S.W.3d at 75. He argues that *Maxwell* and *Garza v. State*, 435 S.W.3d 258 (Tex. Crim. App. 2014), both establish that status-based exemptions from punishment can be raised at any time either before, during or after a proceeding in which a conviction is obtained. From this conclusion he reasons it is not error for the trial court to decide the question of intellectual disability in the pretrial phase of the case without a jury. Significantly, the cases real party cites for this proposition do not suggest that the age of the defendant at the time of the offense was a factual question that was in dispute in any of the cases cited. Thus, the status of the offender was not a fact question that was to be decided in the case. In contrast, questions of intellectual disability are likely to be hotly contested from a factual standpoint. *Atkins,* 536 U.S. at 317 ("To the extent there is serious disagreement about the execution of [intellectually disabled] offenders, it is in determining which offenders are in fact [intellectually disabled]."); *Briseno,* 135 S.W.3d at 9 ("Although experts may offer insightful opinions on the question of whether a particular person meets the psychological diagnostic criteria for mental retardation, the ultimate issue of whether this person is, in fact, [intellectually disabled] for purposes of the Eighth Amendment ban on excessive punishment is one for the finder of fact, based upon all of the evidence and determinations of credibility."). The court of criminal appeals has concluded: "The burden is always upon the defendant to prove that condition [intellectual disability] by a preponderance of the evidence." *Hall v. State*, 160 S.W.3d 24, 38 (Tex. Crim. App. 2004); *accord Gallo,* 239 S.W.3d at 770 ("When the issue is presented at trial, a defendant bears the burden of proof, by a preponderance of the evidence, to establish that he is [intellectually disabled]'). As previously stated, such disputed factual questions are commended to the jury under current Texas criminal procedure.

[9] Real party argues at great length that its preferred procedure is better from a policy perspective than allowing the jury that determined guilt or innocence to also determine whether the defendant is intellectually disabled. It is not within the province of the Court to ignore the requirements of the code of criminal procedure based upon policy considerations.

of the Code of Criminal Procedure sets forth the circumstances under which the State may appeal an order in a criminal case.  TEX. CODE CRIM. PROC. ANN. art. 44.01 (West Supp. 2013).[10]  As the court of criminal appeals observed in *Lycos*, "The trial judge's ruling did not affect the face of the indictment, it merely advised how he intended to proceed at punishment if the state obtained a conviction. . . . .'[T]he prosecution would proceed regardless of the trial court's ruling.'"  *Lykos,* 330 S.W.3d at 914 (citing *State v. Morgan,* 160 S.W.3d 1, 5 (Tex. Crim. App. 2004)).  Accordingly, when the trial court's order affects only the punishment range and the prosecution will move forward regardless of the trial court's ruling, appellate courts have no jurisdiction under article 44.01 to entertain an appeal of the trial court's order.  *Lykos,* 330 S.W.3d at 914; *Morgan,* 160 S.W.3d at 5.

Assuming the trial court finds the real party to be intellectually disabled and not subject to the imposition of the death penalty, nothing in the trial court's order will prevent the prosecution from moving forward on the indictments.  Because the prosecution can proceed regardless of the trial court's ruling, albeit possibly with different punishment options, as in *Lykos* and *Morgan,* article 44.01 provides no authority for an appeal of the trial court's decision regarding whether the real party is intellectually disabled.  *See Watkins*, 352 S.W.3d at 499 ("Article 44.01 simply 'does not authorize the State to appeal from a pretrial ruling on a possible

---

[10] Article 44.01 provides in relevant part:

(a) The state is entitled to appeal an order of a court in a criminal case if the order:
  (1) dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint;
  (2) arrests or modifies a judgment;
  (3) grants a new trial;
  (4) sustains a claim of former jeopardy;
  (5) grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case; or
  (6) is issued under Chapter 64.
(b) The state is entitled to appeal a sentence in a case on the ground that the sentence is illegal.
(c) The state is entitled to appeal a ruling on a question of law if the defendant is convicted in the case and appeals the judgment.

TEX. CRIM. PROC. CODE ANN. art. 44.01 (West Supp. 2013)

punishment issue that fails to dismiss any part of the actual indictment.'"). Thus, relator lacks an adequate remedy via appeal and a writ of mandamus is the appropriate vehicle to review the propriety of the trial court's order.

## V. CONCLUSION

Because we conclude the trial court exceeded its authority in ordering that a pretrial determination of whether real party is intellectually disabled and because we conclude relator has no adequate remedy by appeal, we conditionally grant relator's petition for writ of mandamus. A writ will issue only in the event the trial court fails to vacate its order granting "Defendant's Motion Requesting That Trial Court Conduct Pre-Trial Hearing to Determine Whether Defendant is Intellectually Disabled and Therefore Ineligible for the Death Penalty."

141167F.P05

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE