ACCEPTED
03-14-00586-CR
7174343
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/30/2015 4:24:26 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00586-CR
IN THE COURT OF APPEALS
THIRD DISTRICT
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/30/2015 4:24:26 PM
JEFFREY D. KYLE
Clerk

**TERRELL MAXWELL,
APPELLANT**

vs.

**THE STATE OF TEXAS,
APPELLEE**

APPEAL FROM THE 331ST JUDICIAL DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-08-300490
HON. DAVID CRAIN, PRESIDING

## STATE'S BRIEF

ROSEMARY LEHMBERG
DISTRICT ATTORNEY
TRAVIS COUNTY, TEXAS

M. SCOTT TALIAFERRO
TEXAS BAR NO. 00785584
ASSISTANT DISTRICT ATTORNEY
DIRECTOR, APPELLATE DIVISION
DISTRICT ATTORNEY'S OFFICE
P.O. BOX 1748
AUSTIN, TEXAS 78767
PHONE: 512.854.3626  FAX: 512.854.4810
EMAIL: scott.taliaferro@traviscountytx.gov
        AND AppellateTCDA@traviscountytx.gov

**THE STATE CONDITIONALLY REQUESTS ORAL ARGUMENT**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ............................................. v

STATEMENT OF THE CASE ................................................................................. v

STATEMENT OF FACTS ......................................................................................... 3

SUMMARY OF THE ARGUMENTS ...................................................................... 4

THE STATE'S REPLY TO THE FIRST POINT OF ERROR ............................... 5

    THE PUNISHMENT SCHEME UNDERLYING THE APPELLANT'S LIFE
    SENTENCE DOES NOT VIOLATE THE EIGHTH AMENDMENT .............................. 5

    1.        Nature of the appellant's claim ...................................................... 5

    2.        The applicable statutory scheme ................................................... 7

        a.        The 2005 version of the statute .................................................... 7

        b.        The 2013 version of the statute .................................................... 8

        c.        It is not clear which version of the statute was applied on
                remand ........................................................................................ 9

    3.        Standard governing appellate review ......................................... 12

    4.        The mandatory nature of the punishment scheme does not
            render it unconstitutional as applied to the appellant .................. 13

    5.        *Miller* should be applied only to sentences that literally
            preclude parole .......................................................................... 17

        a.        By its terms, *Miller* merely applies to sentences of life
                without parole ............................................................................ 18

        b.        To extend *Miller*, this Court would be required to assess the
                probability of parole, not merely its possibility .......................... 19

        c.        Assessing the probability of parole is a speculative
                undertaking that should not be performed by this Court ............. 22

    6.        If the Court does perform a probability analysis, it should
            find that the appellant's sentence is not a *de facto* sentence
            of life without parole .................................................................. 28

    7.        Conclusion ................................................................................. 31

PRAYER ................................................................................................................. 32

CERTIFICATE OF COMPLIANCE ..................................................................... 32

CERTIFICATE OF SERVICE ............................................................................... 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andrade v. State*, 700 S.W.2d 585 (Tex. Crim. App. 1985) (Teague, J., concurring) ..................................................................................................22

*Bear Cloud v. State*, 2014 WY 113, 334 P.3d 132 (2014) ..............................19, 24

*Boneshirt v. United States*, No. CIV 13-3008-RAL, 2014 U.S. Dist. LEXIS 161922 (D.S.D. Nov. 19, 2014)....................................................................................30

*Bunch v. Smith*, 685 F.3d 546 (6th Cir. 2012) ..................................................19

*Commonwealth v. Batts*, 620 Pa. 115, 66 A.3d 286 (Pa. 2013)...........................19

*Commonwealth v. Brown*, 466 Mass. 676, 1 N.E.3d 259 (Mass. 2013) .................19

*Ellmaker v. State*, 329 P.3d 1253 (Kan. App. 2014) (not designated for publication) ..............................................................................................29, 30

*Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim. App. 1978) ...................13, 26, 31

*Ex parte Maxwell*, 424 S.W.3d 66 (Tex. Crim. App. 2014)......................ix, 3, 9, 11

*Ex parte Ragston*, 402 S.W.3d 472 (Tex. App.—Houston [14th Dist.] 2013) .......12

*Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) .passim

*Hankins v. State*, 132 S.W.3d 380 (Tex. Crim. App. 2004) .................................26

*Henry v. State*, 82 So.3d 1084 (Fla. App. 2012) ...............................................19

*Henry v. State*, No. 05-14-00197-CR, 2015 Tex. App. LEXIS 7151 (Tex. App.—Dallas July 10, 2015) (not designated for publication)......................................16

*LeBlanc v. Mathena*, 2015 U.S. Dist. LEXIS 86090 (E.D. Va. July 1, 2015) ........24

*Lewis v. State*, 428 S.W.3d 860 (Tex. Crim. App. 2014).................................passim

*Lewis v. State*, 448 S.W.3d 138 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ............................................................................................................15

*Leza v. State*, 351 S.W.3d 344 (Tex. Crim. App. 2011)....................................23

*Miller v. Alabama,* 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)......................passim

*Ouk v. State*, 847 N.W.2d 698 (Minn. 2014).................................................19, 30

*People v. Caballero*, 55 Cal. 4th 262, 145 Cal. Rptr. 3d 286, 282 P.3d 291 (2012) ...............................................................................................................23, 31

*People v. Mendez*, 188 Cal. App. 4th 47 (Cal. App. 2010) .................................23

*People v. Perez*, 214 Cal. App. 4th 49, 154 Cal. Rptr. 3d 114 (Cal. App. 2013)...22, 30

*Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) .......6, 22

*Santikos v. State*, 836 S.W.2d 631 (Tex. Crim. App. 1992)................................12

*State ex rel. Lykos v. Fine*, 330 S.W.3d 904 (Tex. Crim. App. 2011) ...................13

*State v. Kersh*, 127 S.W.3d 775, 777 (Tex. Crim. App. 2004)............................26

*State v. Null*, 836 N.W.2d 41 (Iowa 2013) .................................................22, 24

*State v. Ragland*, 836 N.W.2d 107 (Iowa 2013)...............................................23

*State v. Rosseau*, 396 S.W.3d 550 (Tex. Crim. App. 2013) ................................12

*State v. Vang*, 847 N.W.2d 248 (Minn. 2014) ..................................................18, 30

*Thompson v. State*, 612 S.W.2d 925 (Tex. Crim. App. 1981)...............................23

*Turner v. State*, 443 S.W.3d 128 (Tex. Crim. App. 2014) (per curiam).....15, 16, 27

*Whitehead v. State*, 130 S.W.3d 866 (Tex. Crim. App. 2004) ...............................23

*Wilson v. State*, No. 14-14-00015-CR, 2015 Tex. App. LEXIS 3818 (Tex. App.—
   Houston [14th Dist.] Apr. 16, 2015) (not designated for publication) ...............16

*Wyatt v. State*, 23 S.W.3d 18 (Tex. Crim. App. 2000)..........................................26

### Statutes

Tex. Code Crim. Proc. art. 37.071........................................................................ 8

Tex. Code Crim. Proc. art. 42.02.........................................................................26

Tex. Fam. Code § 51.02........................................................................................ 6

Tex. Gov't Code § 311.032 ..................................................................................10

Tex. Gov't Code § 498.003 ..................................................................................25

Tex. Gov't Code § 508.145 .............................................................................17, 25

Tex. Penal Code § 19.03 ...................................................................................... 7

Tex. Penal Code § 12.31 ................................................................................passim

### Other Authority

George E. Dix & John M. Schmolesky, 43B Texas Practice: Criminal Practice and
   Procedure § 55:48 (3rd ed. 2011)......................................................................23

### Rule

Tex. R. App. P. 38.1 ............................................................................................26

### Constitutional Provision

U.S. CONST., AMEND. VIII ................................................................................ 5

## STATEMENT REGARDING ORAL ARGUMENT

Undersigned counsel for the State believes that oral argument is unnecessary because the briefs filed by the parties adequately present the facts and legal arguments. However, if the Court does grant the appellant's request for oral argument, the State respectfully requests that the Court also permit the State to provide oral argument.

## STATEMENT OF THE CASE

On December 15, 2007—at the age of 17—the appellant shot and killed Fernando Santander during the course of a robbery. The appellant was charged by indictment with capital murder and aggravated robbery. The State did not seek the death penalty. On December 11, 2008, a jury found the appellant guilty of capital murder. 7 RR 165. On that same date, the trial court automatically assessed the appellant's punishment at imprisonment for life without parole. 7 RR 168. *See* Tex. Penal Code § 12.31(a)(2).

The instant appeal is the appellant's second direct appeal. On his first direct appeal, the appellant's conviction and sentence were affirmed by this Court. *See Maxwell v. State*, No. 03-09-00027-CR, 2010 Tex. App. LEXIS 9036 (Tex. App.—Austin Nov. 12, 2010) (not designated for publication). The appellant's petition

for discretionary review was refused by the Court of Criminal Appeals, and this Court's mandate was issued on June 22, 2011. 1 CR 69.

On June 25, 2012, the U.S. Supreme Court ruled, in *Miller v. Alabama*, that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller v. Alabama*, 132 S. Ct. 2455, 2460, 183 L. Ed. 2d 407 (2012).

On October 10, 2012, the appellant sought habeas relief, citing the *Miller* ruling. 1 CR 114, 120. On March 12, 2014, the Court of Criminal Appeals granted habeas relief and vacated the appellant's automatic sentence of life without parole. The appellant's case was remanded to the trial court "for further sentencing proceedings to permit the factfinder to assess applicant's sentence at (1) life with the possibility of parole (as both pre-2005 and post-2013 Texas law permits) or (2) life without parole after consideration of applicant's individual conduct, circumstances, and character." *Ex parte Maxwell*, 424 S.W.3d 66, 76 (Tex. Crim. App. 2014); 1 CR 170.

On August 8, 2014, the trial court assessed the appellant's punishment at imprisonment for life with the possibility of parole. RR 9; 1 CR 234- 36. On September 11, 2014, the appellant filed a motion for new trial. 1 CR 240. The appellant's notice of appeal was filed on that same date. 1 CR 243. On October

21, 2014, the trial court certified that the appellant has the right of appeal in relation to the sentence assessed on remand.[1]  2 CR 3.

On May 19, 2015, the State moved to dismiss this appeal for want of jurisdiction.  As was explained in that motion, the appellant's notice of appeal was untimely.  It appears to undersigned counsel that this Court has not yet ruled on the State's motion.  The State's motion to dismiss this appeal for want of jurisdiction is incorporated herein by reference and is re-urged at this time.

---

[1] The trial court's certification of the appellant's right of appeal does not satisfy the requirements of Rule 25.2(d) of the Texas Rules of Appellate Procedure.  That rule provides, *inter alia*, as follows:

> (d)  Certification of Defendant's Right of Appeal. --If the defendant is the appellant, the record must include the trial court's certification of the defendant's right of appeal under Rule 25.2(a)(2). The certification shall include a notice that the defendant has been informed of his rights concerning an appeal, as well as any right to file a pro se petition for discretionary review. <u>This notification shall be signed by the defendant</u>, with a copy given to him. The certification should be part of the record when notice is filed, but may be added by timely amendment or supplementation under this rule or Rule 34.5(c)(1) or Rule 37.1 or by order of the appellate court under Rule 34.5(c)(2). The appeal must be dismissed if a certification that shows the defendant has the right of appeal has not been made part of the record under these rules.

Tex. R. App. P. 25.2(d) (emphasis added).  In the instant case, the notification does not purport to bear the appellant's signature.  *See* 2 CR 3.  For that reason, the certification does not satisfy the requirements of Rule 25.2.  Unless the appellate record is supplemented with a certification reflecting a signed notification, this appeal "must be dismissed."  Tex. R. App. P. 25.2(d)

IN THE COURT OF APPEALS
THIRD DISTRICT
AUSTIN, TEXAS

**TERRELL MAXWELL,
APPELLANT**

**vs.**

**THE STATE OF TEXAS,
APPELLEE**

APPEAL FROM THE 331ST JUDICIAL DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-08-300490
HON. DAVID CRAIN, PRESIDING

**STATE'S BRIEF**

**TO THE HONORABLE COURT OF APPEALS:**

The State of Texas, by and through the District Attorney for Travis County,

respectfully submits this brief in response to that of the appellant, Terrell Maxwell.

## STATEMENT OF FACTS

In its opinion remanding the instant case to the trial court for further sentencing proceedings, the Court of Criminal Appeals provided the following factual summary:

> A jury convicted applicant of the offense of capital murder. The jury heard evidence that, on the night of December 15, 2007, the 17-year-old applicant, along with Rashad Dukes and Michael Jamerson, were "smoking weed and watching movies" when applicant suggested robbing somebody. Applicant had a revolver that was "all black" except for a "pearl white handle"—"kind of a cowboy-looking gun." They drove Jamerson's car to an apartment complex chosen "because that is where the dope dealers and Mexicans were." When they arrived at the complex, they sat in the car for several minutes. Applicant announced that he would shoot the person they robbed if that person did not give them money.
>
> The trio then got out of the car and approached Fernando Santander, who was sitting in a parked van. Applicant held his gun to Mr. Santander's cheek and demanded that he "give him his money." Visibly scared, Mr. Santander "put up his hands out of shock." According to Dukes, "[T]hat's when [applicant] shot him." Immediately thereafter, applicant and his accomplices "all took off running at the same time." They returned to Jamerson's car and drove away. Applicant told the others that "he didn't mean to do it" and that "it was an accident." Mr. Santander's body was discovered by friends early the next morning, slumped across the center console of the van. A .44 caliber jacket fragment was recovered from the parking lot near the van. A "tipster" led officers to the three suspects. Dukes and Jamerson confessed and testified against applicant in his capital murder trial.

Ex parte Maxwell, 424 S.W.3d 66, 68 (Tex. Crim. App. 2014).

An expanded version of those facts is set forth in the opinion issued by the Austin Court of Appeals in relation to the appellant's first direct appeal. *See*

3

*Maxwell v. State*, No. 03-09-00027-CR, 2010 Tex. App. LEXIS 9036 at *1 -*8

(Tex. App.—Austin Nov. 12, 2010) (not designated for publication).

## SUMMARY OF THE ARGUMENTS

In a single point of error, the appellant asserts that the statutory scheme underlying his sentence of life *with* the possibility of parole is unconstitutional as applied to him. The appellant's claim is predicated upon *Miller v. Alabama,* 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), where the U.S. Supreme Court held that a mandatory sentence of life *without* parole violates the Eighth Amendment's prohibition on cruel and unusual punishment if the defendant was younger than age 18 when the crime was committed.

This Court should reject the appellant's claim. The Court of Criminal Appeals has previously determined that the mandatory nature of that scheme does not render it unconstitutional. Further, the *Miller* holding need not be, and should not be, extended and applied to the appellant's sentence. The statutory scheme at issue is entitled to a presumption of constitutionality, and the appellant has failed to rebut that presumption.

**THE STATE'S REPLY TO THE FIRST POINT OF ERROR**

THE PUNISHMENT SCHEME UNDERLYING THE APPELLANT'S LIFE
SENTENCE DOES NOT VIOLATE THE EIGHTH AMENDMENT.

Argument and Authorities

In his sole point of error, the appellant challenges the punishment assessed by the trial court on remand.

### 1. Nature of the appellant's claim

The appellant contends that the statutory scheme under which he was sentenced is unconstitutional as applied to him. The appellant's claim is based upon two arguments, both of which are predicated primarily upon the holding of the U.S. Supreme Court in *Miller v. Alabama,* 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). In *Miller*, the U.S. Supreme Court held that a mandatory sentence of "life without parole" violates the Eighth Amendment's prohibition on cruel and unusual punishment if the defendant was younger than age 18 when the crime was committed. 132 S. Ct. 2455, 2464.

First, the appellant challenges the mandatory nature of the statutory scheme under which he was sentenced. *See, e.g.*, App. Brief at 23 (emphasizing that "*any* sentencing scheme that takes sentencing discretion away from juries and the courts violates the holding of *Miller v. Alabama*"). Specifically, he argues that the provision at issue, Texas Penal Code section 12.31, is unconstitutional under

*Miller* because it required the trial court to assess a life sentence[2] without requiring

that the court first conduct an individualized sentencing hearing to consider his age

at the time of the offense and the "'three significant gaps between juveniles and

adults'" identified in *Miller*.[3]  App. Brief at 23, quoting *Miller v. Ala.,* 132 S. Ct.

2455, 2464.  In *Miller*, the Supreme Court specified the nature of those "gaps":

> First, children have a "'lack of maturity and an underdeveloped sense
> of responsibility,'" leading to recklessness, impulsivity, and heedless
> risk-taking. Second, children "are more vulnerable . . . to negative
> influences and outside pressures," including from their family and
> peers; they have limited "contro[l] over their own environment" and
> lack the ability to extricate themselves from horrific, crime-producing
> settings. And third, a child's character is not as "well formed" as an
> adult's; his traits are "less fixed" and his actions less likely to be
> "evidence of irretrievabl[e] deprav[ity]."

*Miller v. Ala.*, 132 S. Ct. 2455, 2464, quoting *Roper v. Simmons*, 543 U.S. 551,

569, 570, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005).

Second, the appellant asks this Court to extend the narrow holding of *Miller*

in a way that has not been sanctioned by the U.S. Supreme Court or by any

appellate court in Texas.  Emphasizing that he will merely be "*eligible* for parole

consideration after 40 calendar years," the appellant argues that being paroled is a

---

[2] As used in this brief, the phrases "life sentence" and "life with parole" are used interchangeably and refer to a sentence of life *with* the possibility of parole.

[3] Consistent with its usage in *Miller*, the word "juvenile," as used herein, indicates that the defendants at issue were younger than age 18 when they committed their crimes.  The use of that word does not suggest that the offender at issue was a "child" within the meaning of the Texas Juvenile Justice Code, i.e., a person who was ten years of age or older but younger than 17 years of age.  *See* Tex. Fam. Code § 51.02(2).

"remote possibility" for him and that, as a consequence, "[t]here is effectively no difference between the mandatory sentencing scheme struck down in *Miller v. Alabama* and a sentencing scheme of automatic life in prison with the possibility of parole after 40 years." App. Brief at 25 (emphasis in original). Thus, the appellant seeks to extend *Miller*, which literally addressed sentences of life without parole, to cases involving sentences that are "*de facto*" sentences of life without parole.

## 2. The applicable statutory scheme

The appellant was convicted of capital murder, which is a capital felony. *See* Tex. Penal Code sec. 19.03(b).

### a. The 2005 version of the statute

When the appellant's initial sentence of life without parole was assessed on December 11, 2008, section 12.31(a) provided, *inter alia*, as follows:

> § 12.31. Capital Felony
> (a) … An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the institutional division for <u>life without parole</u>.

Tex. Penal Code § 12.31(a) (2005) (emphasis added).[4] This version of section 12.31(a) (which is referred to herein as "the 2005 version") did not expressly authorize a sentence of life with the possibility of parole.

---

[4] Section 12.31 was amended in 2005 by Senate Bill 60, which added the phrase "without parole" to the statute. *See* Acts 2005, 79th Leg., Ch. 787 (S.B. 60), Sec. 1, eff. September 1, 2005. That same legislation made a similar amendment to article 37.071. *See* Tex. Code Crim.

## b. **The 2013 version of the statute**

The language of section of 12.31(a) changed significantly before August 8, 2014, the date when the trial court, on remand, re-sentenced appellant and assessed the sentence of life with the possibility of parole. By that time, the sentence required by section 12.31(a) depended upon the age of the offender when the offense was committed:

> § 12.31. Capital Felony
> (a) … An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for:
> (1) <u>life</u>, if the individual committed the offense when younger than 18 years of age; or
> (2) <u>life without parole</u>, if the individual committed the offense when 18 years of age or older.

Tex. Penal Code § 12.31(a) (2013) (emphasis added). This amendment of the statute took effect on July 22, 2013.[5] This age-based distinction was added to the

---

Proc. art. 37.071 § 1 (2005) ("If a defendant is found guilty in a capital felony case in which the state does not seek the death penalty, the judge shall sentence the defendant to life imprisonment without parole").

[5] Section 12.31 was amended in 2013 by Senate Bill 2, which added the age-based distinction between the authorized sentences. *See* Acts 2013, 83rd Leg., 2nd C.S., ch. 2 (S.B. 2), § 1, effective July 22, 2013. That same legislation amended article 37.071 by incorporating a reference to section 12.31 into that article. *See* Tex. Code Crim. Proc. art. 37.071 § 1 (2013) ("If a defendant is found guilty in a capital felony case in which the state does not seek the death penalty, the judge shall sentence the defendant to life imprisonment or to life imprisonment without parole as required by Section 12.31, Penal Code").

statute in response to *Miller*. *Ex parte Maxwell*, 424 S.W.3d 66, 69 (Tex. Crim. App. 2014).[6]

### c. **It is not clear which version of the statute was applied on remand**

Even though the amendment of the section 12.31(a) took effect on July 22, 2013, prior to the date (August 8, 2014) when the appellant was re-sentenced, on remand, to life with the possibility of parole, it is not clear that the latter version of section 12.31(a) ("the 2013 version") is the version that was applied when the appellant's punishment was assessed in 2014. Senate Bill 2, the legislation promulgating the 2013 change to the statutory language of section 12.31(a), contained the following savings clause:

---

[6] In its opinion remanding the instant case to the trial court for further sentencing proceedings, the Court of Criminal Appeals provided the following summary of the recent changes to section 12.31(a):

> Until 2005, an individual adjudged guilty of a capital felony in a case in which the State did not seek the death penalty was punished by life. Tex. Penal Code § 12.31(a) (2003). From 2005 to 2009, such an individual was punished by life without parole. Tex. Penal Code § 12.31(a) (2005-2007). From 2009 to 2013, the sentence was (1) life, if the individual's case was transferred to the district court under Section 54.02, Family Code; or (2) life without parole. Tex. Penal Code § 12.31(a) (2009-2011). Section 12.31(a)—amended in response to *Miller*—now provides that "[a]n individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for: (1) life, if the individual committed the offense when younger than 18 years of age; or (2) life without parole, if the individual committed the offense when 18 years of age or older." Tex. Penal Code § 12.31(a) (2013).

*Ex parte Maxwell*, 424 S.W.3d 66, 69 (Tex. Crim. App. 2014).

9

> The change in law made by this Act:
>    (1) applies to a criminal action pending, on appeal, or commenced on or after the effective date of this Act, regardless of whether the criminal action is based on an offense committed before, on, or after that date; and
>    (2) <u>does not affect a final conviction that exists on the effective date of this Act</u>.

Acts 2013, 83rd Leg., 2nd C.S., ch. 2 (S.B. 2), § 3, effective July 22, 2013 (emphasis added).

In short, if the appellant's conviction was already "final," within the meaning of this savings clause, as of July 22, 2013 (i.e., the date when the amendment of the statute became effective), then the 2013 version could not have been applied by the trial court when it assessed the appellant's punishment on remand. If the 2013 version did not apply, it appears that the trial court had authority to apply the 2005 version of the statute, to the extent that the 2005 version remained constitutionally valid.

The appellant asserts that *Miller* "invalidated Texas Penal Code § 12.31(a)(2)." App. Brief at 23. That assertion, however, is not entirely correct. In actuality, *Miller* invalidated the 2005 version of section 12.31 only to the extent that the provision authorizes the *mandatory* imposition of a sentence of life without parole for an offender who committed the offense while younger than 18 years of age. *See* Tex. Gov't Code § 311.032(c) ("In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its

10

application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable"); *Ex parte Jones*, 803 S.W.2d 712 (Tex. Crim. App. 1991).

Thus, the 2005 version of that statute is applied, in effect, by disregarding the phrase "without parole." Where applicable, that version therefore mandates an automatic sentence of life *with parole* for an offender who committed the capital felony while younger than 18 years of age. This is evident from the ruling of the Court of Criminal Appeals in this very case, where the Court's remand order authorized the trial court to assess—without the trial court's "consideration of applicant's individual conduct, circumstances, and character"—a sentence of "life with the possibility of parole." *Ex parte Maxwell*, 424 S.W.3d 66, 76 (Tex. Crim. App. 2014) ("We remand this case for further sentencing proceedings to permit the factfinder to assess applicant's sentence at (1) life with the possibility of parole (as both pre-2005 and post-2013 Texas law permits) or (2) life without parole after consideration of applicant's individual conduct, circumstances, and character").

Although the remand order, issued on March 12, 2014, made reference to "both pre-2005 and post-2013 Texas law," the language used by the Court of Criminal Appeals suggests that neither of those versions was applied here. The "pre-2005" was not applicable because it was superseded by the 2005 version

11

(which took effect on September 1, 2005). If the appellant's conviction was already "final," within the meaning of the savings clause, then (as was explained above) the 2013 version was likewise inapplicable.

In the instant case, it makes no difference which version of section 12.31 was applied. Each version, if applied, mandated the assessment of a sentence of life with the possibility of parole, even though the appellant was age 17 when he murdered Mr. Santander.

### 3. Standard governing appellate review

The appellant makes an "as applied" challenge to the constitutionality of the capital-felony sentencing statute.[7] "[A]n 'as applied' challenge to the constitutionality of a statute requires the challenger to demonstrate that the statute has operated unconstitutionally when applied to his particular circumstances.

---

[7] The appellant's claim does not amount to a *facial* challenge to the constitutionality of the section 12.31. In a facial challenge, the appellate court must examine the statute "as it is written, rather than how it is applied in a particular case." *State v. Rosseau*, 396 S.W.3d 550, 558 (Tex. Crim. App. 2013); *cf. Ex parte Ragston*, 402 S.W.3d 472, 476 (Tex. App.—Houston [14th Dist.] 2013) (distinguishing between facial challenge and as-applied challenge in context of pretrial habeas challenge to section 12.31). Analysis of the statute's constitutionality must begin with the presumption that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it. 396 S.W.3d 550, 558. "A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). Here, the appellant's claim is predicated upon the fact that he was younger than 18 years of age when he committed the offense; he makes no claim that the statute operates unconstitutionally in cases against defendants who were older than age 18 when committing the offense of capital murder.

Because a statute may be valid as applied to one set of facts and invalid as applied to another, it is incumbent upon the challenger to first show that, in its operation, the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 916 (Tex. Crim. App. 2011).

When assessing the constitutionality of a statute as applied, the appellate court is required to presume that the statute is valid and that the Legislature did not act unreasonably or arbitrarily in enacting it. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978).

### 4. The mandatory nature of the punishment scheme does not render it unconstitutional as applied to the appellant

The appellant argues that Penal Code section 12.31is unconstitutional under *Miller*, as applied to him, because the mandatory nature of that statute "precludes consideration of [the juvenile's] chronological age and its hallmark features…." App. Brief at 23, quoting *Miller*, 132 S. Ct. 2455, 2468. He contends, *inter alia*, that "any sentencing scheme that takes sentencing discretion away from juries and the courts violates the holding of *Miller v. Alabama*." App. Brief at 23. The appellant's argument lacks merit because the mandatory nature of the statute did not result in a violation the Eighth Amendment's prohibition against cruel and unusual punishment.

The argument presented here has been squarely addressed by the Court of Criminal Appeals. In *Lewis v. State*, 428 S.W.3d 860 (Tex. Crim. App. 2014), the court held that, unlike a sentence of life without parole, a life sentence may properly be assessed without a punishment hearing, even if the defendant was younger than age 18 when he committed the capital murder. *See id.* at 864.

There, the Court of Criminal Appeals considered the consolidated appeals of two defendants, each of whom committed the offense of capital murder at age 16. Each defendant stood trial as an adult, was convicted of capital murder, and was automatically assessed the mandatory sentence of life without the possibility of parole. Each defendant claimed, on direct appeal, that his sentence was unconstitutional under *Miller*. In each case, the court of appeals agreed with the *Miller* claim and reformed the respective defendant's sentence to life imprisonment with a possibility of parole. *Id.* at 861-63.

Both defendants then filed petitions for discretionary review, claiming that *Miller* requires individualized sentencing of juvenile offenders and that their reformed sentences were therefore unconstitutional. The Court of Criminal Appeals rejected those claims, specifically finding that the mandatory nature of the statute did not run afoul of *Miller*:

> Miller does not forbid mandatory sentencing schemes. The mandatory
> nature of a sentencing scheme is not the aspect that precludes
> rehabilitation; rather, the sentencing scheme in *Miller* was
> unconstitutional because it denied juveniles convicted of murder all

14

possibility of parole, leaving them no opportunity or incentive for rehabilitation. Life in prison with the possibility of parole leaves a route for juvenile offenders to prove that they have changed while also assessing a punishment that the Legislature has deemed appropriate in light of the fact that the juvenile took someone's life under specified circumstances.

*Lewis*, 428 S.W.3d 860, 863 (emphasis added).

Applying those principles to the claims made by the two defendants, the court reasoned as follows:

Appellants argue that they are entitled to individualized sentencing hearings before being assessed sentences of life imprisonment because they were juveniles at the time of their offenses. This is not what *Miller* requires. *Miller* does not entitle all juvenile offenders to individualized sentencing. It requires an individualized hearing only when a juvenile can be sentenced to life without the possibility of parole. After the reformations by the appellate courts, appellants are not sentenced to life without parole, and under Section 12.31 of the Penal Code, juvenile offenders in Texas do not now face life without parole at all. Therefore, appellants' cases do not fall within the scope of the narrow holding in *Miller*.

*Id.*, 428 S.W.3d at 863-64.

The court concluded, "Because the holding in *Miller* is limited to a prohibition on mandatory life without parole for juvenile offenders, appellants are not entitled to punishment hearings." *Id.* at 864. *Accord Turner v. State*, 443 S.W.3d 128, 129 (Tex. Crim. App. 2014) (per curiam) (holding that appellant "is not entitled to an individualized sentencing hearing" and reforming sentence from life without parole to life with the possibility of parole); *Lewis v. State*, 448 S.W.3d 138 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

15

The procedural history of the instant case differs slightly from those of the Court of Criminal Appeals cases addressed above. In *Lewis* and in *Turner*, the sentence of each defendant was *reformed by an appellate court* from life without parole to life with a possibility of parole. In the case at bar, the appellant's original sentence of life without parole was reversed on appeal, and his sentence of life with the possibility of parole was *assessed by the trial court on remand*. That distinction is inconsequential. In other cases where the life sentence was assessed upon remand, the appellate courts have followed *Lewis* and *Turner* and held that the "punishment on remand did not violate the Eighth Amendment." *Henry v. State*, No. 05-14-00197-CR, 2015 Tex. App. LEXIS 7151 at *5 (Tex. App.—Dallas July 10, 2015) (not designated for publication); *Wilson v. State*, No. 14-14-00015-CR, 2015 Tex. App. LEXIS 3818 (Tex. App.—Houston [14th Dist.] Apr. 16, 2015) (not designated for publication).

Accordingly, the Court should find that the appellant was not entitled to an individualized punishment hearing under the Eighth Amendment and that the mandatory nature of section 12.31 therefore did not cause that statute to be unconstitutional as applied to him.

**5.** *Miller* **should be applied only to sentences that literally preclude parole**

As was mentioned above, the appellant asks this Court to extend *Miller* (which addressed only life sentences that literally precluded parole) to a sentence that is, according to the appellant, a "*de facto*" sentence of life without parole. He argues that being paroled is a "remote possibility" for him and that "[t]here is effectively no difference between the mandatory sentencing scheme struck down in *Miller v. Alabama* and a sentencing scheme of automatic life in prison with the possibility of parole after 40 years." App. Brief at 25.

It is true that the appellant's eligibility for parole will not begin until he has served 40 calendar years in prison. *See* Tex. Gov't Code § 508.145(b) (2013) ("An inmate serving a life sentence under Section 12.31(a)(1), Penal Code, for a capital felony is not eligible for release on parole until the actual calendar time the inmate has served, without consideration of good conduct time, equals 40 calendar years").[8] However, that 40-year minimum period of incarceration does not, in and

---

[8] As was explained above, the appellant's life sentence was assessed pursuant to either Texas Penal Code section 12.31(a) (1) (2013) or an earlier version of that same statute, i.e., section 12.31(a) (2005). Regardless of which version of that statute was applied, the appellant's eligibility for parole begins after he has served 40 calendar years in prison. *Compare* Tex. Gov't Code § 508.145(b) (2013) ("An inmate serving a life sentence under Section 12.31(a)(1), Penal Code, for a capital felony is not eligible for release on parole until the actual calendar time the inmate has served, without consideration of good conduct time, equals 40 calendar years") *with id.* § 508.145(b) (2010) ("An inmate serving a life sentence under Section 12.31(a)(1), Penal Code, for a capital felony is not eligible for release on parole until the actual calendar time the inmate has served, without consideration of good conduct time, equals 40 calendar years.").

of itself, compel the conclusion that the appellant's sentence is the functional equivalent of a sentence of life without parole.

As a more fundamental matter, that 40-year requirement does it justify the extension of *Miller* to a sentence that does not literally preclude the possibility of parole. "*Miller* did not hold that a juvenile homicide offender could not be sentenced to life imprisonment *with* the possibility of release." *State v. Vang*, 847 N.W.2d 248, 262 (Minn. 2014). For purposes of assessing constitutionality, a punishment scheme that completely precludes parole differs significantly from a scheme that authorizes parole, even where the juvenile's parole eligibility does not arise for 40 years. Because of those differences, the Court should narrowly construe *Miller* and decline to extend its holding to the present case.

a. **By its terms, *Miller* merely applies to sentences of life without parole**

A number of courts in other jurisdictions have recognized that *Miller* simply does not require an analysis of the type requested by the appellant. In one recent case, for example, the Supreme Court of Wyoming concluded as follows:

> The *Miller* Court did not hold that mandatory life sentences for juveniles were unconstitutional; it only held that a certain process must be followed before imposition of a sentence of life without parole. Like the courts of Massachusetts, Pennsylvania and Minnesota, we conclude that we cannot extend the protections of the United States Constitution to all mandatory life sentences for juveniles, when the United States Supreme Court has declined the opportunity to do so.

18

*Bear Cloud v. State*, 334 P.3d 132, 145, 2014 WY 113 (Wyo. 2014). *See Commonwealth v. Brown*, 466 Mass. 676, 1 N.E.3d 259, 267 (Mass. 2013) ("If the Court in *Miller* had intended to invalidate all mandatory life sentences for juveniles, it could have reached that issue. Instead, Miller's holding was decidedly narrow[.]"); *Commonwealth v. Batts*, 620 Pa. 115, 66 A.3d 286, 296 (Pa. 2013) (expressing reluctance to go further than the Supreme Court, which "neither barred imposition of a life-without-parole sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile"); *Ouk v. State*, 847 N.W.2d 698, 701 (Minn. 2014) (holding that life sentence with the possibility of release after 30 years "does not violate the rule announced in *Miller* because it does not require the imposition of the harshest term of imprisonment: life imprisonment without the possibility of release").

"As one court put it: '[i]f the Supreme Court has more in mind, it will have to say what that is.'" *Bunch v. Smith*, 685 F.3d 546, 553 (6th Cir. 2012), quoting *Henry v. State*, 82 So.3d 1084, 1089 (Fla. App. 2012).

**b. To extend *Miller*, this Court would be required to assess the probability of parole, not merely its possibility**

In *Miller*, the punishment schemes at issue were deemed unconstitutional because they "denied juveniles convicted of murder all possibility of parole, leaving them no opportunity or incentive for rehabilitation." *Lewis*, 428 S.W.3d

19

860, 863 (emphasis added); s*ee Miller*, 132 S. Ct. at 2465 ("Life without parole 'forswears altogether the rehabilitative ideal'"), quoting *Graham v. Florida*, 560 U.S. 48, 74, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *see also Graham*, 560 U.S. at 79 ("A young person who knows that he or she has <u>no chance</u> to leave prison before life's end has little incentive to become a responsible individual").[9]

In contrast to the life-without-parole sentences at issue in *Miller*, a mandatory sentence of life *with* parole is constitutionally permissible precisely because the latter (by definition) gives the juvenile defendant the possibility of parole and therefore does not stifle the incentives associated with that possibility:

> Life in prison with the possibility of parole leaves a route for juvenile offenders to prove that they have changed while also assessing a punishment that the Legislature has deemed appropriate in light of the fact that the juvenile took someone's life under specified circumstances.

*Lewis*, 428 S.W.3d 860, 863.

Thus, for purposes of assessing constitutionality of a punishment scheme in the context of juvenile defendants, the critical distinction between the sentences of life with parole and life without parole is one of "possibility."

The appellant does not dispute that parole is a *possibility* for him. Instead, he focuses on its *probability*, claiming that the possibility of parole in his case is so

---

[9] In *Graham*, the Supreme Court held that the Eighth Amendment is violated where a juvenile offender is "sentenced to life in prison without parole for a nonhomicide crime." *Graham v. Florida*, 560 U.S. 48, 52-53 (U.S. 2010)

20

"remote" or improbable that it causes his sentence to be a *de facto* sentence of life without parole. App. Brief at 25. This distinction between possibility and probability is significant. In *Miller*, the issue was one of possibility, not probability. The punishment schemes at issue there were declared unconstitutional because they "denied juveniles convicted of murder <u>all possibility</u> of parole." *Lewis*, 428 S.W.3d 860, 863.

In *Miller*, it was self-evident that no such opportunity existed. By definition, the life-without-parole sentences literally precluded that possibility. Thus, the probability of parole beyond dispute: it was zero. That fact was crystal clear as early as the date when those sentences were imposed. Consequently, the Supreme Court in *Miller* was not even called upon to assess the *probability* of parole.

Unlike *Miller*, where the dispositive issue was a simple, black-or-white question of possibility, the instant case presents a complicated, shades-of-gray issue of probability. To extend the holding of *Miller* to the instant case, this Court would be required to perform a task that the Supreme Court did not itself perform in *Miller*, i.e., the task of determining the probability of parole. Moreover, this Court (unlike the Supreme Court in *Miller*) would also be required to define the point at which the probability of parole becomes so low (so "remote") that parole no longer amounts to a meaningful, realistic opportunity.

### c. **Assessing the probability of parole is a speculative undertaking that should not be performed by this Court**

Determining the likelihood of parole would require untold speculation by this Court. *Cf. Andrade v. State*, 700 S.W.2d 585, 590 (Tex. Crim. App. 1985) (Teague, J., concurring) ("It is or should now be axiomatic that individual jury predictions on the possibility of parole represent nothing more than 'sheer speculation.' … To invite any jury to indulge in such speculation is to ask it to foretell numerous imponderables, in particular, the policies that may be adopted by the present and unnamed future governors and parole officials.").

The probability of parole in this case depends, in large part, upon the appellant's actual lifespan. At the present time, it is undeniable that parole will be a possibility if the appellant lives to a ripe old age that is well beyond his initial parole-eligibility date (which is invariable because it is fixed by law). On the other hand, it is equally clear right now that, if the appellant's death occurs before the arrival of that same parole-eligibility date, he will have had no such opportunity.

In similar cases, some courts in other jurisdictions have considered life expectancy to be "a key factual issue." *State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013). *See, e.g., People v. Perez*, 214 Cal. App. 4th 49, 57, 154 Cal. Rptr. 3d 114 (Cal. App. 2013) ("We are aware of … no case which has used the *Roper-Graham-Miller-Caballero* line of jurisprudence to strike down as cruel and unusual any sentence against anyone under the age of 18 where the perpetrator still has

22

substantial life expectancy left at the time of eligibility for parole"); *People v. Caballero*, 55 Cal. 4th 262, 145 Cal. Rptr. 3d 286, 282 P.3d 291, 295 (2012) ("Defendant in the present matter will become parole eligible over 100 years from now…. Consequently, he would have no opportunity to 'demonstrate growth and maturity' to try to secure his release, in contravention of *Graham*'s dictate."); *People v. Mendez*, 188 Cal. App. 4th 47, 62-63 (Cal. App. 2010) (finding defendant's sentence to be a *de facto* sentence of life without parole because he "will not be eligible for parole until he is older than 88 years" and "well past his life expectancy, which currently, for an 18-year-old American male, is 76 years").

When attempting to assess a defendant's life expectancy, some appellate courts consider generalized mortality tables or other statistical information. *See, e.g., State v. Ragland*, 836 N.W.2d 107 (Iowa 2013). In the instant case, the appellant makes certain representations regarding "the average life expectancy of federal criminal offenders."[10] App. Brief at 32. The fundamental problem with

---

[10] To the extent that the appellant attempts to buttress his claim by reference to materials that are not part of the appellate record, that attempt must fail. *See, e.g., Leza v. State*, 351 S.W.3d 344, 362 n48 (Tex. Crim. App. 2011); *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004); *Thompson v. State*, 612 S.W.2d 925, 928 (Tex. Crim. App. 1981) ("Articles attached to briefs are not properly before this Court as evidence"); George E. Dix & John M. Schmolesky, 43B Texas Practice: Criminal Practice and Procedure § 55:48 (3rd ed. 2011) at 116 ("Perhaps the most basic characteristic of the appellate record is that it is limited to matters before the trial court. An appellate court may not consider such extra-record materials as affidavits attached to appellate briefs.").

that approach, however, is that any given defendant may die long before, or long after, the date suggested by those tables.

A related problem occurs when courts consider such generalized information but then make adjustments in an attempt to accommodate other variables. *See Null*, 836 N.W.2d at 71 ("It may be, as some have suggested, that long-term incarceration presents health and safety risks that tend to decrease life expectancy as compared to the general population").

The imprecise nature of computing a particular defendant's life expectancy has even led a few courts to conclude that "the determination of whether the principles of *Miller* or *Graham* apply in a given case" should not "turn on the niceties of epidemiology, genetic analysis, or actuarial sciences in determining precise mortality dates." *Null*, 836 N.W.2d at 71; *accord Bear Cloud v. State*, 2014 WY 113, 334 P.3d 132, 142 (2014); *LeBlanc v. Mathena*, 2015 U.S. Dist. LEXIS 86090 at *40 (E.D. Va. July 1, 2015).

The result is that some courts make their rulings without the benefit of any bright-line standard. In *Null*, for example, the Supreme Court of Iowa determined that the evidence (a generalized mortality table) "does not clearly establish that [the defendant's] prison term is beyond his life expectancy" but still found *Graham* and *Miller* to apply because the table "suggests that Null's sentence may closely come

within two years of his life expectancy, but not exceed it." 836 N.W.2d 41, 71 (emphasis added).

Because the Supreme Court has already articulated a standard that is easy to identify and apply—i.e., the *possibility* of parole—this Court should eschew any alternative standard that would cause a ruling to be based upon the vagaries of whether the sentence at issue would be "close[]" enough.

It is true that other factors, such as good conduct, will be considered by the parole board in the future, when deciding whether to parole the appellant. *See, e.g.*, Tex. Gov't Code § 498.003(a) (providing, *inter alia*, that "[g]ood conduct time applies … to eligibility for parole"). But this Court has no basis for concluding, as a matter of law at this time, that those other factors will actually foreclose the possibility of parole when they are considered by the parole board some 40 years from now.

The only fact that can reasonably be predicted now is that the appellant will become eligible for parole at age 57, upon completion of his 40-year minimum stay. *See* Tex. Gov't Code § 508.145(b) (2013); App. Brief at 26. Nobody can predict, with any degree of accuracy, how long the appellant will live beyond his parole-eligibility date. Because the probability of parole necessarily encompasses that factor of life expectancy and a host of other variables, any conclusions about

the probability of the appellant being paroled decades from now would necessarily be highly speculative.

It should be noted that the appellant's claim is not supported by this current uncertainty as to whether he will actually be paroled in the future. "'A State is not required to <u>guarantee</u> eventual freedom,' but must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation'" [11]*Miller*, 132 S. Ct. at 2469 (emphasis added), quoting *Graham*, 560 U.S. at 75, 82. That opportunity must be "realistic." *Graham* at 82. Moreover, the entire statutory scheme at issue here, which includes all of the provisions relating to parole, is entitled to a presumption of constitutionality.[12] *See Ex parte Granviel*, 561 S.W.2d 503, 511.

---

[11] Both *Graham* and *Miller* contain language stating that the possibility of parole must be a *meaningful* possibility. That language is dicta in the sense that the meaningfulness of the possibility was not at issue in either case. In those cases, the defendants were sentenced to life without parole; there was *no* possibility of parole.

[12] In his sole point of error, the appellant challenges the statutory scheme underlying his "sentence." However, he does not expressly challenge any Texas statute relating to parole. The Court of Criminal Appeals has narrowly interpreted the word "sentence." *See State v. Kersh*, 127 S.W.3d 775, 777 (Tex. Crim. App. 2004). "The sentence is that part of the judgment … that orders that the punishment be carried into execution in the manner prescribed by law" or "nothing more than the portion of the judgment setting out the terms of punishment." *Id.* (quoting Tex. Code Crim. Proc. art. 42.02). It follows that parole is not part of a sentence. Any such challenge to any Texas statute relating to parole is therefore inadequately briefed and should not be considered. *See* Tex. R. App. P. 38.1; *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004); *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) ("We will not make appellant's arguments for him" where "appellant points us to nothing in the record, makes no argument, and cites no authority to support this proposition"). Any challenge to any Texas statute based upon the denial of parole is also premature, because the appellant is not yet eligible for parole.

Challenges to the constitutionality of a statute as it applies to a particular individual should not be resolved on the basis of speculation, societal averages, or imprecise appellate determinations as to whether something is "close enough." This is especially true because the Supreme Court was not called upon do so (and did not do so) in *Miller* and because no other appellate court in Texas has extended *Miller* in the way that the appellant seeks here. Another reason is that the punishment at issue was one that "the Legislature has deemed appropriate in light of the fact that the juvenile took someone's life under specified circumstances." *Lewis*, 428 S.W.3d 860, 863.

In light of the daunting challenge associated with divining the probability of parole in this case, the State respectfully suggests that the better practice would be for this Court to avoid that speculative exercise altogether and instead be guided solely by the narrow holdings of *Miller* and the decisions of the Court of Criminal Appeals construing that ruling. *See Lewis*, 428 S.W.3d 860 (Tex. Crim. App. 2014); *Turner*, 443 S.W.3d 128, 129.

In other words, this Court should forego any assessment of *probability* and limit its analysis to a determination of whether the appellant (like the defendants in *Miller*) was denied the *possibility* of parole.

For the Eighth Amendment to be violated, such a denial must result from the applicable punishment scheme. In *Miller*, the defendants' opportunity for parole

27

was literally foreclosed *by the respective punishment schemes*. Regardless of how long those defendants lived, they would never have had a meaningful, realistic opportunity to be paroled. Indeed, they would never have had any opportunity whatsoever. In the instant case, the opportunity for parole has not been foreclosed by the punishment scheme. That opportunity will continue to be a possibility for the appellant unless it is foreclosed by future events.

6. **If the Court does perform a probability analysis, it should find that the appellant's sentence is not a *de facto* sentence of life without parole**

Assuming, for the sake of argument, that *Miller* can properly be extended and applied to sentences that are not literally sentences of life without parole, the question to be resolved here is whether the appellant has established that the punishment scheme deprived him of a meaningful, realistic opportunity to be paroled. *Cf. Miller*, 132 S. Ct. at 2469; *Graham*, 560 U.S. at 75, 82.[13]

No such deprivation has been proved. As was pointed out above, the appellant will be eligible for parole at age 57. The appellant has not established, at the trial level or on appeal, that he will not have a meaningful, realistic opportunity to be paroled when he becomes eligible.[14] This Court does not, for

---

[13] As was explained above, *Miller* does not require such an analysis. Nor does *Graham*, which, by its terms, applies to sentences for "nonhomicide" offenses. *Graham v. Fla.*, 560 U.S. 48, 52 (2010). In the instant case, the sentence at issue relates to the offense of capital murder.

[14] While the mandatory nature of the punishment scheme, in effect, precluded the trial court from considering evidence on this issue during the post-remand sentencing proceedings,

28

example, have any reason to believe that the appellant will not live long enough to take advantage of that opportunity when it arrives. Nor is there any basis for concluding, as a matter of law, that the incentives associated with that possibility have been stifled.

Simply put, the appellant has not established that his sentence is either cruel or unusual. In *Ellmaker*, for example, a Kansas appellate court considered a challenge to a juvenile's sentence that required a mandatory term of imprisonment of 50 years, otherwise known as a "hard 50 sentence." The juvenile committed the underlying murder when he was 17 years old. The court rejected that claim, concluding that the sentence was not the functional equivalent of a sentence of life without parole.

> Granted, a teenager has a greater likelihood of serving all 50 years of the sentence than an offender who is, for example, 50 years old. But whereas a hard 50 sentence is the functional equivalent of a life sentence without the possibility of parole for an offender who is 50 years old when the sentence is imposed, a juvenile offender who receives a hard 50 sentence actually has a chance for release from prison at the end of the term.
> \*\*\*
> A hard 50 sentence is a severe sentence that carries with it a long term of mandatory imprisonment; yet unlike a sentence of life without parole or the death penalty, it is not mutually exclusive with eventual release. Considering the explicit way in which the United States Supreme Court has distinguished life without parole sentences and the death penalty and set them apart from all other sentences, we decline

the appellant will presumably have the ability to present relevant evidence in the future during a habeas proceeding.

> Ellmaker's invitation to extend this category to include a hard 50 sentence when imposed on juveniles. Thus, we reject Ellmaker's assertion that a hard 50 sentence on a juvenile offender is the functional equivalent of a life sentence without parole. Because Ellmaker's claim is based on this premise, his arguments under *Miller* fail for this reason alone.

*Ellmaker v. State*, 329 P.3d 1253 (Kan. App. 2014) (not designated for publication).

See also *Boneshirt v. United States*, No. CIV 13-3008-RAL, 2014 U.S. Dist. LEXIS 161922 at *26 - 827 (D.S.D. Nov. 19, 2014) (regarding juvenile convicted of murder, federal court rejected claim that sentence violated *Miller*, reasoning, *inter alia,* "In reality, Boneshirt has a realistic opportunity to be released from custody before he dies…. Boneshirt thus will be released from prison between the ages of fifty-nine and sixty-five."); *Ouk v. State*, 847 N.W.2d 698, 701 (Minn. 2014) (holding that life sentence with the possibility of release after 30 years "does not violate the rule announced in *Miller* because it does not require the imposition of the harshest term of imprisonment: life imprisonment without the possibility of release"); *State v. Vang*, 847 N.W.2d 248, 262-63 (Minn. 2014) (rejecting juvenile's claim, reasoning, "Appellant's life sentence with the possibility of release after 30 years is not tantamount to a death sentence. Because appellant is eligible for release after 30 years, his mandatory life sentence for first-degree murder does not constitute cruel and unusual punishment under the Eighth Amendment and the principles of *Miller*"); *People v. Perez*, 214 Cal. App. 4th 49,

57, 154 Cal. Rptr. 3d 114 (Cal. App. 2013) (where juvenile, convicted of nonhomicide crimes, was assessed two mandatory, consecutive terms totaling of 30 years to life, the court concluded, "There is no dispute that … he will be eligible for parole when he reaches age 47. That is, by no stretch of the imagination can this case be called a 'functional' or '*de facto*' [sentence of life without parole], and therefore neither *Miller*, *Graham*, nor *Caballero* apply.").

## 7. <u>Conclusion</u>

The Court should reject the appellant's claim that the statutory scheme underlying his life sentence violates the Eighth Amendment prohibition against cruel and unusual punishment. The Court of Criminal Appeals has previously determined that the mandatory nature of that scheme does not render it unconstitutional. Further, *Miller*, which addressed sentence of life *without* parole, need not be—and should not be—extended and applied to the appellant's sentence of life *with* the possibility of parole. The statutory scheme is entitled to a presumption of constitutionality, and the appellant has failed to rebut that presumption. *See Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978).

The appellant's point of error should be overruled.

## **PRAYER**

WHEREFORE, the State requests that the Court overrule the appellant's point of error and affirm the judgment of the trial court.

Respectfully submitted,
Rosemary Lehmberg
District Attorney
Travis County, Texas

Timothy Elliott
Law Clerk

/s/ M. Scott Taliaferro
M. Scott Taliaferro
Texas Bar No. 00785584
Assistant District Attorney
Director, Appellate Division
District Attorney's Office
P.O. Box 1748
Austin, Texas 78767
Phone: 512.854.3626   Fax: 512.854.4810
Email: scott.taliaferro@traviscountytx.gov
and appellateTCDA@traviscountytx.gov

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i), I hereby certify, based on the computer program used to generate this brief, that this brief contains 7,795 words, excluding words contained in those parts of the brief that Rule 9.4(i) exempts from inclusion in the word count.

/s/ M. Scott Taliaferro
M. Scott Taliaferro

## CERTIFICATE OF SERVICE

I hereby certify that, on the 30th day of September 2015, the foregoing State's brief was sent, via U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the appellant's attorney, Jon Evans, Esq., 806 W. 11th Street, Austin, Texas 78701, fax no. (512) 477-6840.

/s/ M. Scott Taliaferro
M. Scott Taliaferro